The bill is therefore dismissed. It is so ordered.

---

ST. LOUIS, I. M. & S. RY. CO. et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener).

(District Court, E. D. Illinois. September 10, 1914.)

No. 959.

1. COMMERCE (§ 97*)—INTERSTATE COMMERCE COMMISSION—REVIEW OF ORDERS.
    Courts of the United States can review orders of the Interstate Commerce Commission only on questions of law. They cannot consider questions of policy or expediency, or substitute their findings of fact for those of the Commission; but they may consider the question whether there

---

is any evidence on which those findings can legally be based, which is one of law.

[Ed. Note.—For other cases see Commerce Cent. Dig. § 147; Dec. Dig § 97.*]

2. COMMERCE (§ 88*)—ORDERS OF INTERSTATE COMMERCE COMMISSION.

An order of the Interstate Commerce Commission, directed against a number of railroad companies, based on a finding of discrimination, must be supported by evidence which is sufficient to warrant a finding separately against each company named therein.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. § 88.*]

3. COMMERCE (§ 87*)—INTERSTATE COMMERCE—DISCRIMINATION IN RATES.

A charge of discrimination cannot be made by a locality against a railroad company which does not serve that locality, either directly by its own line or by a joint arrangement with other companies for a through route and a joint rate.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 139; Dec. Dig. § 87.*]

4. COMMERCE (§ 85*)—INTERSTATE COMMERCE COMMISSION—ORDERS RELATING TO RATES.

In a proceeding before the Interstate Commerce Commission against separate railroad companies charged with discriminating against a locality, the Commission has no legal jurisdiction to compel two connecting roads, only one of which reaches such locality, to make a through route and a joint rate; nor, where such two companies have not made a through route or joint rate, but each charges its own separate rate to and from the point of connection, neither of which rates is found to be unreasonable, is there any legal basis in the evidence for an order of the Commission making a reduction in the sum of the two rates.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.*]

5 COMMERCE (§ 88*)—INTERSTATE COMMERCE COMMISSION—ORDERS RELATING TO RATES.

In establishing through routes with joint rates in proper proceedings looking to that end, the Interstate Commerce Commission cannot deprive a carrier of the benefit of a full haul over its own line, unless there is a finding, based on adequate evidence, that the haul over the entire distance would make the through route unreasonably long.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. § 88.*]

In Equity.   Petition for injunction by the St. Louis, Iron Mountain & Southern Railway Company and the St. Louis Southwestern Railway Company against the United States, in which the Interstate Commerce Commission became intervener.   Granted.

H. G. Herbel, of St. Louis, Mo., for complainant St. Louis, I. M. & S. Ry. Co.

S. H. West and E. A. Haid, both of St. Louis, Mo., for complainant St. Louis Southwestern Ry. Co.

Joseph W. Folk and Charles W. Needham, both of Washington, D. C., for intervener.

Blackburn Esterline, of Washington, D. C., Sp. Asst. Atty. Gen., and Charles A. Karch, U. S. Atty., of Danville, Ill.

Before BAKER, Circuit Judge, and HUMPHREY and WRIGHT, District Judges.

BAKER, Circuit Judge (orally). If the complainants must obey the Commission's order, it will be necessary for them to prepare tariffs by September 20th, and it is therefore necessary that this application for a temporary injunction promptly be determined. The importance and novelty of the questions involved might well justify a carefully prepared opinion; but having been given a very complete exposition of the case through the able and elaborate arguments of counsel, and having come to the conclusion that an injunction should issue, we proceed, in view of the limited time, at once to enter a decree and to indicate briefly the grounds of our decision.

[1] Beginning with the Abilene Case, and down through the Pitcairn, Robinson, Mitchell Coal & Coke, International Coal, and many other cases, the general principle has been thoroughly settled that the courts of the United States cannot act in these interstate commerce cases as they can in ordinary appeals in equity, where the court may examine the evidence and substitute its finding of facts for that of the original tribunal. Questions of policy and expediency cannot be considered. In short, nothing can be reviewed except questions of law. But in interstate commerce cases, as in all other cases, it is always a question of law whether there is evidence on which the finding can legally be based.

[2] The order attacked by these complainants was entered in a proceeding before the Commission wherein merchants of Metropolis, Ill., were petitioners and a score of railroads were respondents. The petitioners asserted that the railroad rates from Southern and Southwestern lumber territory to Metropolis were wrongful in two respects: First, that the rates in themselves were excessive; and, second, that the rates exhibited an undue preference in favor of Cairo, Ill., and undue discrimination against Metropolis. The Commission found that the first charge was without basis in fact, and placed its order wholly upon the ground of discrimination. All of the respondent railroads, except these two complainants, have apparently acquiesced in the order; and we are of the opinion that the evidence before the Commission was sufficient on which legally to base a finding that discrimination against Metropolis was exercised by some of the railroads which were respondents in the proceeding before the Commission. It is now argued by the defendants in this case that, because there was evidence before the Commission to justify a finding of discrimination by some, the order must stand as against all the railroads which were parties to the hearing. In our opinion this is erroneous. In a civil case against a number of defendants, or in a criminal indictment against numerous defendants, a judgment cannot be permitted to stand against a certain defendant, if there is no evidence against him, merely because there may be evidence which would support the judgment against other defendants. And so we believe that, as a matter of law, an order of the Interstate Commerce Commission must be supported by evidence which is sufficient to warrant a finding separately against each railroad named in the order.

[3] Against neither of the complainants in this cause was there evidence before the Commission which could legally support a charge

of discrimination on its part. The railroad of neither complainant touches Metropolis. Each has a 16-cent rate over its own rails from points of origin in Southwestern lumber territory to Cairo. This Cairo rate, the record shows, was an abnormally low rate, forced upon these complainants by competition of other trunk lines. Neither of the complainants joins with any other railroad in making a through route and a through rate to Metropolis. When lumber reaches Cairo over the line of either of the complainants, the shipper pays 16 cents per hundredweight, which is a rate that the Commission has not found excessive for that service. If the lumber is to go beyond complainants' lines at Cairo and is destined to Metropolis, it must be carried on the independent line of the Illinois Central, and the shipper must pay therefor 6 cents per hundredweight, which the Commission has not found to be an excessive charge for that service. How can it be said on this basis of fact that either of the complainants is discriminating against Metropolis? How can any one discriminate against another whom he does not serve and with whom he does not come in contact? We believe that, as a matter of law, the charge of discrimination cannot be brought by a locality against any railroad that does not serve that locality, either directly by its own route or by a joint arrangement with other railroads for a through route and a joint rate.

Other railroads which were parties to the hearing before the Commission were serving Cairo and Metropolis through Memphis as an intermediate gateway, and through such gateway the distance on those other railroads to Metropolis was substantially the same as to Cairo. Therefore there was no legal basis on which those railroads could maintain that the discrimination practiced by them was not undue.

[4] The order as applied to these complainants makes the rate to Metropolis 17 cents, a reduction of 5 cents from the sum of the two independent rates of 16 cents from the Southwestern territory to Cairo and 6 cents from Cairo to Metropolis. In the proceeding before the Interstate Commerce Commission these complainants and the Illinois Central Railroad were parties respondent, but each to answer only to a charge of discrimination on its own part. In such a proceeding how could the Commission have jurisdiction to do indirectly what it could only do directly in a proceeding of another character—a proceeding not then pending before the Commission? The Commerce Act gives the Commission jurisdiction to entertain a hearing against two or more railroads as joint respondents for the purpose of compelling them jointly to establish a through route and jointly to establish over such through route through rates. In a proceeding of that character the Commission would have legal jurisdiction, if there was a legal basis in the evidence to support the finding, to compel the joint railroad respondents to establish a through route with through rates and to compel them to submit to an apportionment of the through rates. But in this proceeding, which in our opinion involves only a question of discrimination against each railroad separately, the Commission had no legal jurisdiction to undertake to compel these complainants to establish a through route with a through rate, jointly with the Illinois Central. Which road, complainants or the Illinois Central, is to bear

the reduction of 5 cents from the sum of two fair and reasonable independent rates? No party should be left subject to penalties for failing to obey an order which affords him no protection if he does obey. The complainants have no power, under the order now in question, to compel the Illinois Central to bear any part of the reduction; the finding in effect being that the Illinois Central charge of 6 cents from Cairo to Metropolis is reasonable. There is, therefore, no lawful basis for the order, which in effect compels the complainants to reduce their already disproportionately low rate of 16 cents down to 11 cents.

[5] The only way that the complainants could avoid giving such an effect to the order would be for them to divert their traffic from their own rails to Memphis, and thus surrender a substantial part, probably one-half, of the average haul on their own rails. Even in establishing through routes with through rates, in proper proceedings looking to that end, the Commission cannot deprive a carrier of the benefit of a full haul over its own line, unless there is a finding, based, of course, upon adequate evidence, that the haul over the entire distance would make the through route unreasonably long. As a matter of law we therefore hold that, on the record before the Commission, there was no authority to undertake to compel the complainants to divert the traffic from their own lines and turn it over to other lines through the Memphis gateway.

We are further of the opinion that the Commission erred in matter of law in failing to give effect to the manifest fact that the Cairo rate in and of itself was abnormally low, due to competition of other trunk lines and to competition of other points of origin of the lumber traffic. We say "other points of origin" because, in our judgment, territory extending from Georgia to Texas cannot justly be viewed as one and the same point of origin of traffic to Cairo and Metropolis.

For these reasons we are of the opinion that an interlocutory decree in favor of the complainants should be entered; and, counsel for the respective parties having agreed that no further evidence could be produced at the final hearing, the cause is now submitted for final decree, and the injunction will therefore be made permanent.