The libel must therefore be dismissed, and it is so ordered.

---

ST. LOUIS SOUTHWESTERN RY. CO. et al. v. UNITED STATES et al.

(District Court, W. D. Kentucky. April 13, 1916.)

No. 33

1. COMMERCE ☞88—INTERSTATE COMMERCE COMMISSION—FINDINGS AS TO REASONABLENESS OF RATES.

All presumptions are in favor of a finding of the Interstate Commerce Commission, made in the exercise of its especial functions and after full investigation, that a rate in force is not so low as to be unremunerative, and that a proposed increase is not justified; but the commission cannot condemn a rate without a finding based on substantial evidence that it is unjust, unreasonable, or discriminatory.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. ☞88.]

2. COMMERCE ☞97—INTERSTATE COMMERCE COMMISSION—REVIEW OF ORDERS.

The courts cannot interfere with a rate fixed or practice established by the Interstate Commerce Commission unless it is made plainly to appear that the orders are void as violative of the Constitution or wanting in conformity to statutory authority, or that the power of the commission has been arbitrarily exercised; and the duty of the court in reviewing the action of the commission is to determine the sole question whether the order in the particular case is within such authority and is based upon substantial evidence heard and considered by the commission.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 147; Dec. Dig. ☞97.]

3. COMMERCE ☞88—INTERSTATE COMMERCE COMMISSION—VALIDITY OF ORDER ESTABLISHING THROUGH ROUTE AND JOINT RATES.

Petitioners operate railroads extending into the yellow pine lumber district lying west of the Mississippi and south of the Rock Island line from

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Memphis to Little Rock and make a blanket rate on lumber from such territory to Cairo, Ill., of 16 cents per 100 pounds, and to Paducah, Ky., about 40 miles east of Cairo on the Ohio, of 22 cents. The two cities are competitors in the manufacture and sale of lumber and its products. None of petitioners reach Paducah with their own lines, but two of them reach Cairo by lines crossing the Mississippi a few miles above, and the Paducah rate is based on the rate to Cairo with the local rate from there to Paducah added. All of petitioners can reach both Cairo and Paducah through connecting lines by way of Memphis by a shorter route, that to Paducah being shorter than that to Cairo, but in order to do so some of them, especially those whose lines reach Cairo, would have a much shorter haul on their own lines. The rate to Cairo is reasonable. *Held,* that a finding by the Interstate Commerce Commission that the rate to Paducah is unjustly discriminatory against that point and in favor of Cairo was sustained by the facts, and that an order based thereon requiring petitioners and their connecting lines to establish through routes and joint rates to Paducah not higher than those now charged to Cairo, by way of Memphis or Cairo in the alternative, was within the powers of the commission.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. &#9426;&#9473;88.]

4. COMMERCE &#9426;&#9473;88—INTERSTATE COMMERCE COMMISSION—POWER TO FIX RATES.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 15, 24 Stat. 384, as amended by Act June 18, 1910, c. 309, § 12, 36 Stat. 551 (Comp. St. 1913, § 8583), which authorizes the Interstate Commerce Commission to correct unjust practices, and also provides that the commission may, after hearing, with or without a complaint, establish through routes and joint rates, the power of the commission to establish through routes and joint rates does not depend upon a finding that all of the carriers affected have been guilty of unjust discrimination, but such power may be exercised if discrimination in fact existed.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. &#9426;&#9473;88.]

5. COMMERCE &#9426;&#9473;88—INTERSTATE COMMERCE COMMISSION—POWERS.

An order of the Interstate Commerce Commission requiring the establishment of a through route and joint rates is not invalid, as beyond its powers, because it compels some of the carriers affected, which do not reach the terminal point with their own lines, to accept a shorter haul, or in the alternative to make a reduction in their rate to another connecting point which in itself is reasonable.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. &#9426;&#9473;88.]

In Equity. Petition by the St. Louis Southwestern Railway Company ("Cotton Belt"), the St. Louis, Iron Mountain & Southern Railway Company ("Iron Mountain"), the Chicago, Rock Island & Pacific Railway Company ("Rock Island"), and the Louisiana & Arkansas Railway Company, intervening petitioner, against the United States of America, respondent, and the Interstate Commerce Commission, intervening respondent, for an injunction and on motions by respondent and intervener to dismiss. Motions granted and injunction denied.

Edward A. Haid, of St. Louis, Mo. (A. L. Burford, H. G. Herbel, and F. G. Wright, all of St. Louis, Mo., W. F. Dickinson, of Chicago,

Ill., and Henry Moore, of Texarkana, Ark., on the brief), for petitioners and intervening petitioner.

Blackburn Esterline, Sp. Asst. Atty. Gen., and P. B. Miller, U. S. Atty., of Louisville, Ky. (Thomas L. Kibler, of Washington, D. C., on the brief), for the United States.

Charles W. Needham, of Washington, D. C. (Joseph W. Folk, of Washington, D. C., on the brief), for intervening respondent Interstate Commerce Commission.

Before WARRINGTON, Circuit Judge, and EVANS and HOLLISTER, District Judges.

PER CURIAM. The controversy relates to through routes and joint freight rates on yellow pine and lumber in carload lots to Cairo, Ill., and Paducah, Ky., originating from the territory in Louisiana and Arkansas, bounded on the north by the line of the Rock Island from Memphis, Tenn., to Little Rock, Ark., including Des Arc, Ark.; on the east by the Mississippi river; on the south by the Gulf of Mexico; and on the west by a line drawn through Kansas City, Mo., and Houston, Tex.—embracing a tract about 400 miles long by 300 miles wide.

The petitioners operate west of the Mississippi river. The Cotton Belt and Iron Mountain extend far into the territory described, each having its own rails to Bird's Point on the Mississippi opposite Cairo. The Rock Island, extending far into this territory, may send its lumber to Cairo and to Paducah by the Iron Mountain or the Cotton Belt west of the river, or by delivery at Memphis to the Illinois Central, or the Nashville, Chattanooga & St. Louis Railway.

There is no bridge or other present method of crossing the Mississippi at Cairo, and the lumber is hauled across the river at Thebes, some 30 miles northwest of Cairo, thence to Cairo by the Iron Mountain over its own line, and by the Cotton Belt over the Chicago & Eastern Illinois, or Illinois Central, with which roads it has trackage agreements. The Louisiana & Arkansas Railway operates its own lines far within the lumber territory in which it crosses the lines of the other petitioners and connects with them for this traffic. The Iron Mountain and Rock Island have their own lines to Memphis. From Memphis and east of the Mississippi, the line of the Illinois Central runs to both Cairo and Paducah; and Memphis and Paducah are also connected by the line of the Nashville, Chattanooga & St. Louis. It appears, therefore, that the lines of none of the petitioners reach Paducah, whether the lumber is routed via Cairo or via Memphis. The Paducah rates are combination—not through joint—rates.

Production of yellow pine in this territory is a comparatively modern development, the railroads gradually extending their lines southwardly as the northern market for it developed, and in the beginning established low rates to assist in overcoming the then prejudice against southern pine. When the production was extended south of the Arkansas river, the rate to Thebes and Cairo from that territory was made 13 cents per 100 pounds, and was by the railroads themselves made a blanket rate covering the entire territory at that time exploited.

As further production extended southwardly, the railroads built further into the territory, but the same blanket rate existed until 1899, when the Cairo rate was increased to 14 cents, and in 1903, to 16 cents, at which figure the rate remained up to the time of the institution of the proceedings involved in this controversy.

This increase of 2 cents was attacked by producers as unreasonable and unjustly discriminatory, but was sustained by the commission (May 4, 1909), because the evidence did not warrant a disturbance of the blanket adjustment, and because transportation conditions west of the Mississippi were sufficiently different from those east to warrant higher rates from the southwest than from the pine districts extending through the southern tier of states from the Mississippi river to Florida. Chicago Lumber & Coal Co. v. Tioga S. E. Ry. Co., 16 Interst. Com. Com'n R. 323. The Cairo rate was again attacked (Wisconsin & Arkansas Lumber Co. v. St. Louis, I. M. & S. Ry. Co., 33 Interst. Com. Com'n R. 33), but the commission found (January 12, 1915) that neither the existing blanket arrangement nor the rates were shown to be unreasonable or unjustly discriminatory. Thereafter, upon the filing and suspension of tariffs by these petitioners and others proposing to increase the rates on lumber from all southern points to the Ohio river crossings and other points, the petitioners, seeking an increase from 16 cents to 17 cents from the southwestern blanket to Cairo, the commission, in an elaborate opinion by McChord, Chairman, reviewing the history of the development of the yellow pine production in the entire southern territory, and the rates on the same, both east and west of the Mississippi river, found that the proposed increase on yellow pine to Cairo was not shown to be reasonable, and the 16-cent rate not shown to be unremunerative. Investigation and Suspension Docket No. 520, decided July 12, 1915; 34 Interst. Com. Com'n R. 652.

[1] While in these cases the commission recognized the competitive character of the Cairo rate, yet, when they were determining the application of these very railroads to increase the rate, they, with all the facts before them, and dealing with an intricate situation, could see no justification for making the increase. The problem before them in that application directly concerned rate making, and their duty was peculiarly administrative in character. Loomis v. Lehigh Valley R. Co., 240 U. S. 43, 50, 36 Sup. Ct. 228, 60 L. Ed. 517. The fixing of rates was in the exercise of one of their especial functions; and when they expressed the opinion, as they did, that the Cairo rate was not unduly low, all the presumptions are in favor of their finding. Interstate Commerce Commission v. Illinois Central R. Co., 215 U. S. 452, 470, 30 Sup. Ct. 155, 54 L. Ed. 280; Interstate Commerce Commission v. Chicago & A. R. Co., 215 U. S. 479, 480, 481, 30 Sup. Ct. 163, 54 L. Ed. 291; Interstate Commerce Commission v. Chicago, Rock Island & Pac. Ry. Co., 218 U. S. 88, 110, 30 Sup. Ct. 651, 54 L. Ed. 946. It may, for present purposes, be assumed that the 16-cent rate to Cairo was reasonable for the service performed.

The rate to Paducah via Cairo is 22 cents, and is made by adding

to the Cairo rate the local rate (6 cents) charged by the Illinois Central for its haul of 42 miles. There was evidence tending to show that this was reasonable for the service rendered, and nothing appears to the contrary. It may be conceded, for it is the law (Interstate Commerce Commission v. L. & N. R. Co., 227 U. S. 88, 91, 33 Sup. Ct. 185, 57 L. Ed. 431), that the commission cannot condemn a rate without a finding to that effect on substantial evidence; and, if there were no other route to Paducah except through Cairo, it is quite sure the commission could make no order in any way depriving the petitioners of their reasonable rate to Cairo. But the commission was also dealing in this case, as will appear, with the route to Paducah via Memphis, which, in its opinion, based on substantial evidence, was the more natural, and hence the logical route to Paducah.

The Paducah Board of Trade (June 28, 1913) filed a petition with the commission against the petitioners and many other railroads west and east of the Mississippi participating in the lumber traffic from the southern hardwood and yellow pine district, alleging the injustice, unreasonableness, and unduly discriminatory character of the rates from the southwestern blanket as against Paducah, to the undue preference and advantage of Cairo. Thereupon the commission found (March 3, 1914, Paducah Board of Trade v. Illinois Cent. R. Co., 29 Interst. Com. Com'n R. 583, 592) the charge true and required the petitioners "to maintain rates to Paducah from substantially equidistant points or groups in Arkansas and Louisiana west of the river, on and south of the line of the Chicago, Rock Island & Pacific from Memphis to Little Rock, no higher than those contemporaneously maintained from the same points to Cairo." Since the petition did not contain a specific request for the establishment of through routes and joint rates, the commission found itself without power to make an order in that behalf (29 Interst. Com. Com'n R. 592), and the railroad companies, including these petitioners, the Illinois Central and the Nashville, Chattanooga & St. Louis, ignored the commission's expectation that they would revise their tariffs by May 1, 1914, in accordance with the commission's views. Thereafter, February 8, 1915, the Paducah Board of Trade filed a second petition against the petitioners and others, including the Illinois Central and the Nashvillle, Chattanooga & St. Louis, in which it was truly alleged, in substance, that:

"Paducah, Ky., is on the south bank of the Ohio river and is a jobbing and manufacturing city and does a large business in buying, selling, rehandling and manufacturing lumber and lumber commodities, and is a large shipper of lumber and lumber commodities made from hardwood lumbers, pine and cottonwood and gum. That the principal competitors of the lumber merchants and manufacturers of Paducah are located at Cairo, Ill., a city located on the north bank of the Ohio river about 40 miles from Paducah, and that both Cairo and Paducah obtain a large part of their supply of lumber from the producing territory west of the Mississippi river in the states of Louisiana and Arkansas, and that the rates maintained by defendants (petitioners herein) on lumber and lumber commodities from said territory to Paducah, Ky., are from 2 to 6 cents higher than the rates contemporaneously maintained by defendants to Cairo, Ill."

It was charged that the rates maintained by the defendants "on logs and lumber in carloads to Paducah from producing points in Louisiana and Arkansas, on and south of the Chicago, Rock Island & Pacific Railway from Memphis, Tenn., to Little Rock, Ark., and including Des Arc, Ark., are unjust, unreasonable and discriminatory and give to Cairo, Ill., an undue preference and advantage and subject Paducah, Ky., to an undue prejudice and disadvantage; that the route from said producing points to Paducah, Ky., via Cairo, Ill., is unduly long as compared with the route from said producing points to Paducah via Memphis, Tenn., and that through routes and joint rates should be established from said producing points to Paducah, Ky., via Memphis, Tenn., and joint rates should be established via said route which do not exceed the rates contemporaneously maintained from said producing points to Cairo, Ill." The prayer was for the establishment of "through routes and joint rates for shipments of logs and lumber to Paducah, Ky.," from the points named "via Memphis, Tenn., with joint rates via said routes which shall not exceed the rates contemporaneously charged for the transportation of logs and lumber from the same points to Cairo, Ill."

The Cairo Association of Commerce intervened in the interests of Cairo, but does not join in the petition in this action.

On the evidence, including the evidence on the first petition, and upon a full hearing, the commission filed its report in writing (Paducah Board of Trade v. Illinois Cent. R. Co., 37 Interst. Com. Com'n R. 719, 725), and found:

"The defendants unduly discriminate against Paducah to the undue preference and advantage of Cairo by the maintenance of their present rates on logs and lumber from the producing points here involved; * * * the rates on logs and lumber to Paducah from points of origin in the territory involved are unreasonable to the extent that they exceed the present rates to Cairo."

And, further, "that the defendants should establish through routes to Paducah" from the territory involved, "and joint rates applicable via such through routes no higher than the rates at present maintained from the same points or groups to Cairo. These through routes and joint rates may be established via either Memphis or Cairo." An order was made, effective March 20, 1916, requiring defendants, in so far as they participate in the traffic, to cease and desist from publishing, demanding, or collecting their present rates for the transportation of logs and lumber to Paducah, Ky., from the points or groups named, and ordered them to establish and maintain "through routes * * * via Cairo, Ill., or Memphis, Tenn., to Paducah, Ky.," from the territory involved, "and to establish and maintain joint rates to Paducah, Ky., applicable via such through routes, not in excess of the rates at present in effect from the same points or groups to Cairo, Ill."

The effective date of this order was extended by the commission to June 1, 1916.

March 14, 1916, petitioners filed their petition in this court against the United States, praying that the order of the commission be enjoined and set aside, and for a "temporary" injunction, which we inter-

234 F.—43

pret to mean the "interlocutory" injunction contemplated by the statute (Act Oct. 22, 1913, c. 32, 38 Stat. at L. pt. 1, p. 220). The case was, however, heard upon its merits and finally submitted.

March 17, 1916, the United States filed a motion to dismiss, and the commission filed its answer as intervening respondent, moving also to dismiss. The Illinois Central and Nashville, Chattanooga & St. Louis were parties to all of the earlier proceedings, and, not having joined in this application for relief against the order, presumably intend to comply with it.

The petitioners contend that the rates prescribed are unreasonably low, and, in effect, confiscatory, and the order void for the reasons:

(1) The commission by its order attempts to establish joint rates less in amount than the present combination of rates, although it has not found the present combination of rates to be unreasonably high.

(2) There was no evidence before the Interstate Commerce Commission from which it could find the present combination of rates to be unreasonably high.

(3) In determining whether "the present rates to Paducah are unjustly discriminatory and give an undue preference to Cairo," the commission failed to consider the dissimilarity of conditions under which freight is transported and rates made to Cairo and Paducah, respectively.

(4) There was no evidence before the commission to sustain a finding that the present combination of rates makes or gives an undue or unreasonable preference or advantage to Cairo.

(5) The commission is without authority to find petitioners guilty of discriminating against a point which they do not serve with their own rails, and to which they publish no joint through rates.

(6) Said order of the commission is not responsive to the prayer of the complaint.

(7) The prayer of the complaint being for the establishment of through routes and joint rates via Memphis, the commission was without jurisdiction to enter an alternative order, as it attempted to do.

(8) The commission is without jurisdiction to establish through routes and joint rates over the lines of petitioners St. Louis Southwestern Railway Company and St. Louis, Iron Mountain & Southern Railway, via Memphis, in the absence of a finding that the routes via Cairo are unreasonably long.

(9) There was no evidence before the commission from which it could find that the routes over the lines of petitioners St. Louis Southwestern Railway Company or St. Louis, Iron Mountain & Southern Railway via Cairo are unreasonably long.

(10) The commission has not designated the carrier to the through routes ordered by it, between Memphis and Paducah.

(11) The commission is without authority to order through routes via all lines operating between Memphis and Paducah.

(12) There was no evidence before the commission bearing upon the constructive mileage of the bridge at Cairo.

(13) The commission is without authority to take into consideration the constructive mileage of a bridge in determining the reasonableness of a route.

(14) There was no evidence to support the finding of the commission that the present Cairo rate would be a reasonable rate for the transportation of lumber and logs to Paducah.

(15) There was no evidence before the commission justifying the establishment of through routes and joint rates.

(16) The order of the commission amounts to confiscation, and is therefore in violation of the fifth amendment to the Constitution of the United States.

[2] At the threshold it may be said that the scope of our inquiry is exceedingly limited, and involves only the ultimate question as to whether the commission, in the order complained of, acted within its power. Whatever view the court might entertain upon it, or upon the expediency or wisdom of the order, is not material. The court cannot interfere with the rates fixed, or practice established, by the commission, unless it is made plainly to appear that the orders are void, as violative of the Constitution, or wanting in conformity to statutory authority, or has been arbitrarily exercised; and the duty of the court is to determine the sole question, whether or not the order of the particular case is based upon substantial evidence, heard and considered by the commission. Int. Com. Comm. v. Union Pacific R. R., 222 U. S. 541, 547, 32 Sup. Ct. 108, 56 L. Ed. 308; Procter & Gamble v. United States, 225 U. S. 282, 297, 298, 32 Sup. Ct. 761, 56 L. Ed. 1091; Mitchell Coal Co. v. Pennsylvania R. Co., 230 U. S. 247, 257, 33 Sup. Ct. 916, 57 L. Ed. 1472; A., T. & S. Ry. Co. v. United States, 232 U. S. 199, 221, 34 Sup. Ct. 291, 58 L. Ed. 568; United States v. L. & N. R. Co., 235 U. S. 314, 321, 35 Sup. Ct. 113, 59 L. Ed. 245; L. & N. R. Co. v. United States (D. C.) 225 Fed. 571, 579, 580.

The commission has power to deal with acts made unlawful by section 3 of the act to regulate commerce, revised to September 1, 1912, which provides:

"That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Comp. St. 1913, § 8565.

[3] Complaint was made by Paducah Board of Trade in its first petition for alleged infractions of this section; and in its second it invoked also the power granted the commission by section 15, which, among other things, provides:

"The commission may also, after hearing, on a complaint or upon its own initiative without complaint, establish through routes and joint classifications, and may establish joint rates as the maximum to be charged and may prescribe the division of such rates as hereinbefore provided and the terms and conditions under which such through routes shall be operated, whenever the carriers themselves shall have refused or neglected to establish voluntarily such through routes or joint classifications or joint rates. * * * And in establishing such through route, the commission shall not require any company, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith which

lies between the termini of such proposed through route, unless to do so would make such through route unreasonably long as compared with another practicable through route which could otherwise be established."

Cairo, Ill., of about 17,000 inhabitants, lies at the confluence of the Mississippi river and the Ohio river. The lumber traffic from the south converges on Cairo, which is one of the Ohio river gateways for southern lumber to the northern market. Served, as it is, by the Cotton Belt and Iron Mountain by their own lines, the lumber hauled by those roads naturally goes to Cairo via Thebes. To that point the local rate was charged; from thence the rate to the market is local, so that lumber destined for Paducah pays the Cairo rate plus the Illinois Central local rate to Paducah. The Paducah rate is not a joint rate, but is a proportional rate.

Since the Cotton Belt does not go to Memphis on its own line, as the Rock Island and Iron Mountain do, it appears that rates are made by the Illinois Central on lumber from those roads to Cairo and to Paducah highly discriminatory against Paducah (22 cents, and in some instances 24 cents), for which, apparently, there is no reason, except the power of the Illinois Central to compel them. Naturally, since on the west side of the river the roads haul to Cairo via Thebes for 16 cents, the Illinois Central would, as it does, exact no greater amount via Memphis than would make the Cairo rate equal to that rate established on the west side of the river. Thus, the rates to Paducah are made on the basis of the Cairo combination, although, in some instances, the rate via Memphis to Paducah is even greater than the Paducah rate via Cairo. The Rock Island's long haul is to Memphis, reaching Cairo by the Illinois Central. All of its rates are made on the Memphis combination, with the exception of its Cairo rate. The distance from Memphis via Illinois Central to Paducah and Cairo is about the same—169 miles. What the division between the Rock Island and the Illinois Central is on Cairo traffic does not appear. The representative of the Rock Island had no objection to furnish the information to the commission, but did not care to give it to the public.

The point of this is, and the evidence shows, that, although the distance from Memphis to Paducah is the same as to Cairo, and the Illinois Central serves both localities, the rate to Paducah via Memphis is from 2 to 6 cents higher than the rate to Cairo by any of the roads.

The Nashville, Chattanooga & St. Louis reaches Paducah on its own line, and Cairo by connections with the Illinois Central. Its line is much longer than the Illinois Central's line to Paducah, and yet, in competition with the Illinois Central, it would not receive a greater rate from traffic via Memphis. The result is that the Rock Island and the Iron Mountain and the Louisiana & Arkansas, shipping via Memphis for Paducah, would receive, on division with the Illinois Central or the Nashville, Chattanooga & St. Louis, presumably some part of the excess of the Paducah over the Cairo rate. This would be true, also, of the Cotton Belt, if it shipped that way.

The Rock Island's most available route to Paducah is via Memphis, and we see no reason why it and the Louisiana & Arkansas, located as it is at the heart of the territory, could not, at least as well, ship to

Paducah via Memphis as via Cairo. Two or more lines would have to be used in any event.

Paducah, with a population of about 25,000, is as well located relative to the northern market for yellow pine as is Cairo, both having important connections with the market, north, northeast, and northwest, and it is nearer the great northeastern market. Paducah lies rather better than Cairo, being on higher ground, since a part, at least, of the manufacturing district at Cairo, is subject to overflow in times of high water. Lumber from the southwestern blanket to Paducah via Cairo must cross both the Mississippi and the Ohio, while lumber from the same territory to Paducah via Memphis crosses the Mississippi only. The Cairo bridge was an expensive structure, and, while there was no evidence how large an arbitrary mileage might be considered for the bridge, yet its existence was a proper subject for consideration.

The actual mileage from the southwestern blanket is 40 to 60 miles shorter to Paducah than to Cairo, and it is only sufficient to glance at the map to see, the shorter distance also being considered, that Memphis is the logical and natural gateway for Paducah rather than Cairo from all of the roads operating in the southwestern blanket. This the commission found, and the Illinois Central acquiesces. See opinion, St. Louis, I. M. & S. Ry. Co. v. United States (D. C.) 217 Fed. 80. The facts were all before the commission, and well they might find, as they did, looking over the whole field, and comparing the relative advantages of Paducah and Cairo—

"that the rates on logs and lumber to Paducah from points of origin in the territory involved are unreasonable to the extent that they exceed the present rates to Cairo." 37 Interst. Com. Com'n R. 719–725.

While it may be true, and there are decisions to the effect, that undue discrimination between two localities is not shown by difference of distance alone, or difference in rates alone, or by the mere fact that the difference in rates operates to the disadvantage of one locality as against another (it abundantly appeared by the evidence that those dealing in lumber at Paducah in various ways compete with Cairo merchants in the same business at a great disadvantage, and, in instances, to the destruction of the business at Paducah and its establishment at Cairo), yet all of these, together with the lay of the land, the directness of the route via Memphis as compared with the route via Cairo, and the other facts enumerated above as they appeared to the commission, present a situation in which appears no reason why, from the southwestern blanket, there should be a higher rate to Paducah than to Cairo.

It is true that it was to the interest of the Cotton Belt and Iron Mountain to ship via Cairo, yet the Memphis route was to them not only available and practicable, but it has the advantages enumerated over the Cairo route; and, except for the fact that those roads would lose a part of their haul and the greater revenue derived therefrom, there is no reason why they should not, and every reason why they should, route via Memphis, unless the lumber business at Paducah is to be abandoned to its fate.

The commission therefore had before it the difficult and delicate problem of giving the interests of these railroads recognition, while at the same time granting to Paducah at least equality with Cairo from the territory nearer to it than to Cairo; on more direct lines, and abundantly served by adequate railroad facilities.

Aside from isolated instances of hardship to the Rock Island and to the Louisiana & Arkansas, growing out of the order as affecting some particular locality in the blanket, it must be said that the rates are blanket rates, established by the railroads themselves; and, if there are particular instances of hardship with respect to any particular locality, it will be time to deal with that when it is properly presented to the commission for specific consideration. There seems to be no reason why these two roads should not route their Paducah lumber via Memphis rather than via Cairo, and every reason why Paducah should be entitled to have it routed that way.

The case really narrows down to a conflict in interest between the Cotton Belt especially, and the Iron Mountain to a less degree, since it reaches Memphis with its own line, on the one side; and Paducah on the other. If Paducah is to be served, those railroads must give up something. If the railroads' interests are to be solely considered, Paducah must abandon the lumber business, or carry it on at an enormous disadvantage in favor of Cairo.

But the commission must conserve, as nearly as possible, the interests of both, and, taking a comprehensive view of the entire situation, having in mind the interests of the public, the localities affected, and their commercial interests, have power to compel the railroads to sacrifice something when justice requires such sacrifice. It was said by Mr. Justice McKenna, in Int. Com. Comm. v. Chicago, Rock Island & Pac. R. Co., 218 U. S. 88, 103, 30 Sup. Ct. 651, 656 (54 L. Ed. 946):

"The outlook of the Commission and its powers must be greater than the interest of the railroads or of that which may affect those interests. It must be as comprehensive as the interest of the whole country."

We find there was substantial evidence before the commission that the rates from the blanket territory were unduly discriminatory against Paducah, to the preference and advantage of Cairo; and, since 16 cents to Cairo was a reasonable rate, the Paducah rate should be no higher. If the lumber could go only via Cairo, this would amount to a finding that the 22-cent rate by that gateway was in itself unreasonable; but, because there is a preferable way to Paducah via Memphis —and Paducah is situated at least as advantageously as Cairo—it is unreasonable to haul via Cairo at a higher rate if the Memphis route be open. It was not open as long as the Illinois Central stood in the way, maintaining, via Memphis, the 22-cent rate to Paducah; but when the order commanded that road to establish, with the petitioners, through routes at a rate no more to Paducah than to Cairo, this cleared the way to all of these railroads to serve Paducah on the same basis as Cairo.

The blanket local rate to Memphis is 14 cents; thence via Illinois Central to Cairo 2 cents, and to Paducah 8 cents. The Rock Island

and Louisiana & Arkansas and the other petitioners, if they wished to haul via Memphis, were at the mercy of the Illinois Central. What division in fact the Illinois Central made, or was willing to make, on Paducah traffic, does not appear.

The fact, however, that the Rock Island and Louisiana & Arkansas were helpless, and, if they shipped to Paducah, must do so on rates fixed on the Cairo combination, and that the Cotton Belt and Iron Mountain, if there were no other route to Paducah than via Cairo, would be entitled to maintain their 16-cent rate to Cairo on Paducah traffic, does not alter the essential fact that, another practical route being available, the Paducah rate was discriminatory and unreasonable in comparison with the Cairo rate. Whatever the reasons were, all of these petitioners participated in a rate discriminatory to Paducah. The discrimination lay in fixing the Paducah rate on the Cairo combination when justice to Paducah required the rate to be fixed on the Memphis combination.

The commission, having power to do justice between Cairo and Paducah under section 15, by compelling the Illinois Central, with the petitioners, to establish a more reasonable through route via Memphis at no greater rate to Paducah than to Cairo, the 22-cent rate, based on the Cairo combination, could no longer stand.

[4] But we think we are not compelled to the conclusion that power to establish through routes and joint rates depends upon finding the petitioners guilty of discrimination. In addition to other powers enumerated in section 15 and in section 1, it is said in that part of the section hereinbefore quoted that the commission may *also*, after hearing, with or without complaint, establish through routes and joint rates; and other parts of the section give power to correct unjust practices. The practice of compelling Paducah traffic to bear so great an additional burden, it would seem to us, could be remedied by the commission, even though the petitioners, or any of them, were not directly responsible for it.

It would seem that the commission itself did not consider the basis of the order to be altogether discrimination by these petitioners, for they say (37 Interst. Com. Com'n R. 719, 720, the second Paducah Case):

"The principal issue in the present case is whether it is appropriate or lawful to require the defendants to establish through routes and joint rates to Paducah via Memphis. In the previous case we held that the Memphis route was the natural route for the movement of this traffic, but as the complaint did not contain a prayer for through routes we did not require their establishment."

And in the case of St. Louis, Iron Mountain & S. Ry. Co. v. United States (D. C.) 217 Fed. 80, 83, a case in which the town of Metropolis, Ill., not far from Paducah, made a complaint of discrimination against the same railroads, and for largely the same reasons, Judge Baker, speaking for the court, said:

"The Commerce Act gives the commission jurisdiction to entertain a hearing against two or more railroads as joint respondents for the purpose of compelling them jointly to establish a through route and jointly to establish over such through route through rates. In a proceeding of that character the Commission would have legal jurisdiction, if there was a legal basis in the

evidence to support the finding, to compel the joint railroad respondents to establish a through route with through rates and to compel them to submit to an apportionment of the through rates. But in this proceeding, which in our opinion involves only a question of discrimination against each railroad separately, the Commission had no legal jurisdiction to undertake to compel these complainants to establish a through route with a through rate, jointly with the Illinois Central."

But whether the petitioners, or any of them, could be justly found to be discriminating against Paducah, or not, discrimination against Paducah existed, and we are of opinion that the commission had power to grant Paducah relief.

If, in strict accordance with the allegations and prayer of the second petition, a through route over the Illinois Central from Memphis to Paducah had been established, then the Cotton Belt and Iron Mountain would lose the advantage of their long haul to Cairo, and the Nashville, Chattanooga & St. Louis, so far as it competed for the business, would have to haul at the same figure. This would not have interfered with the rate to Cairo, but would have compelled the petitioners to send their Paducah traffic through Memphis. This would have required, under section 15, a finding that the routes of the Cotton Belt and Iron Mountain via Cairo were "unreasonably long" as compared with the other practicable route via Memphis. We say "required," not only because of the language of section 15, but also by analogy; for we take it that if a rate cannot be condemned as discriminatory, except upon a finding based on substantial evidence that it is unreasonable, so a railroad could only be required to abandon its long haul upon substantial evidence, and a finding that the long haul was, in comparison, unreasonably long. There was substantial evidence, and, in substance, a finding to this effect, for the commission say (29 Interst. Com. Com'n R. 583, 591)—

" * * * it is evident that the route to Paducah via Cairo is, in the language of section 15 of the act, 'Unreasonably long as compared with' the direct route to Memphis."

If the route had been established via Memphis alone, and included both the Illinois Central and Nashville, Chattanooga & St. Louis, there might have been ground, and the petitioners make much of the point, that such route over the line of the latter would in fact have made a longer through route to Paducah than via Cairo. If the order involved only the Illinois Central, an injustice might have been involved in shutting out the Nashville, Chattanooga & St. Louis from this traffic altogether. But the order does not compel any of the petitioners to route via Memphis, and does not compel the Iron Mountain and Cotton Belt to give up their long haul unless they choose to do so; so that the case is not one for the application of that part of section 15 which withholds from the commission power to require a railroad to give up its long haul unless it is unreasonably long as compared with a more practicable route. There was no occasion for a finding that their routes were unreasonably long in themselves. What the commission meant was that the Cairo to Paducah route was unreasonably long in comparison with the route via Memphis. As their own long hauls were left open to them, it was no concern of theirs that

through routes were also established elsewhere. Int. Com. Comm. v. Chicago, Rock Island & Pac. Ry. Co., 218 U. S. 88–109, 30 Sup. Ct. 651, 54 L. Ed. 946; Clark v. Kansas City, 176 U. S. 114, 118, 20 Sup. Ct. 284, 44 L. Ed. 392. The petitioners were given a choice of through routes, either via Memphis or Cairo, and the alternative presented to the Cotton Belt and Iron Mountain was to route via Memphis, in which case they would lose their long haul, or forego as much of their 16-cent rate to Cairo as the Illinois Central would exact for its haul thence to Paducah. They could adopt either alternative, or forego Paducah traffic altogether.

[5] The question then remains whether or not, if they preferred their long hauls, they could be compelled, as they were, to reduce their Cairo rate. Paducah was not on the lines of the Iron Mountain and Cotton Belt. They had no inherent right to ship to Paducah via Cairo, if, in the judgment of the commission in the exercise of the power to establish through routes to prevent injustice to Paducah, another route was available, although thereby they must forego a part of a reasonable local rate. The reasonableness of that local rate was not a limitation upon the power of the commission simply because it resulted in the reduction of a rate which, under other circumstances, was reasonable, for the reason, as the commission has frequently held, "that rates may be reasonable *per se* and yet unlawful because of their unduly discriminatory character." (Through Rates to Points in Louisiana and Texas, 38 Interst. Com. Com'n R. 153, 162; Board of Trade of Lynchburg v. Old Dominion S. S. Co., 6 Interst. Com. Com'n R. 632; Lumbermen's Exchange of St. Louis v. Anderson & S. R. R. Co., 24 Interst. Com. Com'n R. 220; Transcontinental Commodity Rates Cases, 32 Interst. Com. Com'n R. 449).

It is said in Tap Line Cases, 234 U. S. 1, 28, 29, 34 Sup. Ct. 741, 748 (58 L. Ed. 1185), in speaking of the commission:

"That body has the authority and it is its duty to reach all unlawful discriminatory practices resulting in favoritism and unfair advantages to particular shippers or carriers."

No doubt that the court would have said localities also, if appropriate.

These roads, therefore, must submit to the power, the exercise of which, indirectly, causes a reduction in their Cairo rate, should they choose to haul that way. The fact that it causes them a loss becomes the result of competitive conditions, but is not confiscatory of their property. In any event, this property is not taken without due process of law. O'Keefe v. United States, 240 U. S. 294, 36 Sup. Ct. 313, 60 L. Ed. 651 (U. S. Supreme Court, February 21, 1916). The fact is the commission have held on testimony and evidence properly before them that the Cairo rate was fairly remunerative. The Illinois Central must deal with these roads in fairness, or be compelled to do so by the commission in some other proceeding. It is probable the traffic would be profitable even with considerable reduction. But it cannot, in any event, be regarded as confiscatory, unless it appears what the reduction is, and its effect. The effect of the order compels the Cotton Belt and Iron Mountain to compete with the other roads for the Padu-

cah traffic on terms fair to Paducah. There seems to be no reason why they should not be compelled to do so.

It is true that in many cases the commission have declined to consider issues sought to be raised in proceedings before them not included in the complaint or covered by its prayer for relief. 6 Interst. Com. Com'n R. 647, 677; Board of Trade of Chicago v. Atchison, T. & S. F. Ry. Co., 29 Interst. Com. Com'n R. 438, 444; Stuart Draft Milling Co. v. Southern Ry. Co., 31 Interst. Com. Com'n R. 623, 624; Lindsay & Co. v. N. P. Ry. Co., 33 Interst. Com. Com'n R. 150, 151; Michigan Bean Jobbers' Ass'n v. Grand Rapids & I. Ry. Co., 33 Interst. Com. Com'n R. 318, 320), yet the statute itself gave the commission the power to act on its own initiative. The whole situation was before them. None of the petitioners were taken by surprise, a full hearing was had, and the establishment of the alternative route was the only departure from the prayer of the complaint. What is said in N. Y. C. & H. R. R. Co. v. Int. Com. Comm. (C. C.) 168 Fed. 131, 138, 139, by Judge Noyes, sitting with Judges Lacombe and Ward, is directly applicable. See, also, C. H. & D. Ry. Co. v. Interstate Commerce Commission, 206 U. S. 142, 149, 150, 27 Sup. Ct. 648, 51 L. Ed. 995.

We think the order complained of is not open to any of the objections to it. It does not deprive the petitioners of any paramount rights. Cairo is in no position to complain, and does not complain, since its rates are not affected; and Paducah obtains the relief to which she is entitled.

The motions to dismiss will be granted, and the petition and intervening petition will be dismissed, but without costs.