AMERICAN EXPRESS COMPANY ET AL. *v.* STATE OF SOUTH DAKOTA EX REL. CALDWELL, AS ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH DAKOTA.

No. 902. Argued April 13, 1917.—Decided June 11, 1917.

When the Interstate Commerce Commission finds that interstate rates are unduly discriminatory as compared with competitive intrastate rates and orders that the discrimination be abated, a further finding that the interstate rates are not unreasonable implies an authority to the carrier to maintain them and to raise the competitive intrastate rates to their level.

But findings that such discrimination exists and that the interstate rates are reasonable do not necessarily imply a finding that the intrastate rates are unreasonable; both may be reasonable and yet produce discrimination, which is a relative matter.

An order of the Interstate Commerce Commission directing carriers to desist from discriminating against interstate commerce by charging lower rates for local competitive intrastate traffic, may properly leave to the carriers discretion to determine whether the discrimination shall be removed by lowering the interstate rates, or by raising the intrastate rates, or by doing both.

Where the rates which a carrier seeks to alter, in avoiding the discrimination condemned by the Commission, are intrastate rates which have been fixed by state authority, the Commission's order will justify the carrier only in so far as the order makes definite the territory or places to which it applies.

In cases where the dominant federal authority is exerted to affect intrastate rates, it is desirable that the orders of the Commission should be so definite as to the rates and territory to be affected as to preclude misapprehension.

The territorial scope of the order of the Commission here involved is ascertained (the order being on its face somewhat indefinite) by referring from the order to the report accompanying and made part of it, and thence to the maps of the railroads over which the report states the appellant express companies operate.

A. state law (Laws South Dakota 1911, c. 207, § 10, as amended by Laws, 1913, c. 304) providing that no advance of intrastate rates may be made except after 30 days' notice filed with a board of railroad commissioners, and published; can not properly apply to changes in intrastate rates which a carrier seeks to make in obedience to an order of the Interstate Commerce Commission, to abate discrimination against interstate traffic.

A suit by a State to enjoin carriers from advancing intrastate rates without first complying with state regulations will not be treated as a suit, beyond the jurisdiction of the state court, "to enforce, set aside, annul, or suspend in whole or in part" an order of the Interstate Commerce Commission (see Commerce Court Act, c. 309, 36 Stat. 539), where the Commission's order covers the proposed advances in part only, is not mentioned in the bill and is not relied on in the answer as justifying them all.

38 S. Dak. ——, modified and affirmed.

The case is stated in the opinion.

*Mr. C. O. Bailey* and *Mr. Branch P. Kerfoot*, with whom *Mr. T. B. Harrison, Mr. J. H. Voorhees* and *Mr. C. W. Stockton* were on the brief, for plaintiffs in error.

*Mr. Oliver E. Sweet*, with whom *Mr. Clarence C. Caldwell*, Attorney General of the State of South Dakota, *Mr. P. W. Dougherty* and *Mr. Byron S. Payne* were on the brief, for defendants in error.

*Mr. Joseph W. Folk* and *Mr. Charles W. Needham*, by leave of court, filed a brief as *amici curiæ* on behalf of the Interstate Commerce Commission.

*Mr. John Barton Payne, Mr. R. B. Scott* and *Mr. A. P. Humburg*, by leave of court, filed a brief as *amici curiæ* on behalf of the Illinois Central Railroad Co. *et al.*

Mr. Justice Brandeis delivered the opinion of the court.

In 1912 the Interstate Commerce Commission entered upon a comprehensive investigation of express rates,

practices, accounts and revenues. Its report [1] resulted in the establishment, on February 1, 1914, throughout the United States, of the so-called uniform zone and block system of rates in interstate transportation and the prompt adoption, in forty States, of the same system in intrastate transportation.[2] South Dakota did not adopt the national system. It adheres to a schedule of maximum express charges, known as Distance Tariff No. 2, which was promulgated by its Board of Railroad Commissioners in 1911, and which, on weighted average, is about forty per cent. lower than the zone and block system. Shippers of Sioux City, Iowa, complained that the differences between these interstate and intrastate scales of rates resulted in unjust discrimination against them to the advantage of their South Dakota competitors. Proceedings to secure relief were brought by them before the Interstate Commerce Commission; and on May 23, 1916, its report and order were filed. *Traffic Bureau of the Sioux City Commercial Club* v. *American Express Company*, 39 I. C. C. 703.

This order,[3] couched in general terms, prohibited charg-

---

[1] *In the Matter of Express Rates, Practices, Accounts and Revenues*, 24 I. C. C. 380; 28 I. C. C. 132. The order was modified in some respects in 1915; 35 I. C. C. 3.

[2] 28 Ann. Rep. of Interstate Commerce Com., p. 26.

[3] "This case being at issue upon complaint and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the Commission having, on the date hereof, made and filed a report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof:

"*It is ordered*, That the above-named defendants, according as they participate in the transportation, be, and they are hereby, notified and required to cease and desist, on or before August 15, 1916, and thereafter to abstain, from publishing, demanding, or collecting higher rates for the transportation of shipments by express between Sioux City, Iowa, and points in the state of South Dakota, than are contemporaneously published, demanded, or collected for transportation

ing after August 15, 1916 (later extended to September 15, 1916) "higher rates for the transportation of shipments by express between Sioux City, Iowa, and points in the State of South Dakota, than are contemporaneously . . . demanded . . . for transportation under substantially similar circumstances and conditions for substantially equal distances between Sioux Falls, Mitchell, Aberdeen, Watertown and Yankton, South Dakota, on the one hand, and said points in the State of South Dakota on the other, which said relation of rates has been found by the Commission to be unjustly discriminatory."

The order made "the report containing its findings of fact and conclusions thereon" a part thereof; and the report makes clear that the order applied only to competitive territory, and that this is the southeastern section of South Dakota. The report also declared "that the South Dakota rates are too low to be made the measure of interstate rates between Sioux City and South Dakota points;" that the existing interstate rates "have not been shown to be unreasonable"; that no reason has been presented for modifying them; and that the Commission is "under no doubt as to how the unjust discrimination found to exist should be corrected"; but the report did not expressly state that the intrastate rates should be raised, nor did it enumerate the competitive points in South Dakota to which the rate adjustment should apply.

In July, 1916, the express companies conferred informally with the Board of Railroad Commissioners about introducing in South Dakota complete intrastate tariffs corresponding with the zone and block system scale, and also about introducing special tariffs on that basis covering

under substantially similar circumstances and conditions for substantially equal distances between Sioux Falls, Mitchell, Aberdeen, Watertown, and Yankton, S. Dak., on the one hand, and said points in the state of South Dakota, on the other, which said relation of rates has been found by the Commission to be unjustly discriminatory."

rates between the cities of Sioux Falls, Mitchell, Aberdeen, Watertown and Yankton and *all* other points in the State. On August 5 the Board issued an order for a general investigation of express rates; and set for hearing on December 4, 1916, that investigation as well as the applications to put into effect these special or general tariffs. In an opinion then filed, it said:

"The rates which shall be put into effect to remove the discrimination found by the Interstate Commerce Commission to exist in favor of jobbers at Aberdeen, Watertown, Sioux Falls, Mitchell and Yankton, and against Sioux City and its jobbers, have not yet been determined. As these rates are to apply on intrastate traffic and between stations and over lines wholly within this State, this commission [Board] is the proper tribunal to fix these rates. To permit the putting into effect of two systems of rates, one from the cities named and another from all other cities in the State, would create an intolerable situation."

On August 25, the express companies formally presented to the Board the special tariffs, to become effective September 15. And on September 12, the Board formally refused to allow the same to be filed, and rejected them; among other reasons, because the "schedules have not been printed and published, and thirty days' notice of the time when the said proposed classifications, tariffs, tables and schedules shall go into effect has not been given to the Board of Railroad Commissioners of the State of South Dakota, and to the public, as required by the provisions of Section 10 of Chapter 207 of the Laws of 1911."

On the same day the Attorney General of South Dakota and the Board of Railroad Commissioners brought an original proceeding in the Supreme Court of the State against the American Express Company and Wells Fargo & Company to enjoin them from putting into effect the special tariffs covering *all* their rates within the State to

and from the five cities named; and a restraining order was issued. The defendants complied with the restraining order; but filed an answer in which they set up the order of the Interstate Commerce Commission, and alleged that about August 15 they published certain express rate tables, but that "all rates for the carriage of express matter intrastate throughout the State of South Dakota were left the same as provided in the South Dakota Express Distance Tariff No. 2, Exhibit A hereto, excepting the rates to and from the cities of Sioux Falls, Aberdeen, Watertown, Mitchell and Yankton, and other South Dakota points; that to the business between said cities . . . and other South Dakota points there were applied the rates prescribed by the Interstate Commerce Commission, as hereinbefore set forth, for interstate traffic between points within and points without the State of South Dakota; that excepting for the application of the Interstate Commerce Commission rates to traffic to and from said cities . . . no changes were made in the express tariffs throughout the State of South Dakota, as the same had previously existed under the provisions of the South Dakota Distance Tariff No. 2. . . ."

There was in the answer no explicit allegation that no change in rates had been made except as required by the Commission's order.[1]

---

[1] The answer also alleged that shippers and organizations representing the merchants of the five South Dakota cities had brought suit against these and other express companies in the District Court of the United States for the Northern District of Iowa to enjoin the enforcement of the order of the Interstate Commerce Commission and the putting into effect of the special tariffs above referred to; that on filing the bill an order of notice issued; that the United States and the Interstate Commerce Commission appeared specially to object to the jurisdiction of the court; and that on August 28, three judges sitting, an order was entered as follows: "the plaintiffs with leave of court offer their evidence in support of the application for a temporary writ of injunction and the court finds that upon the showing made the plain-

The plaintiffs demurred to the answer upon the ground that it did not state facts sufficient to constitute a defense to the suit. The demurrer was sustained and defendants having elected to stand on their answer, a perpetual injunction was granted on December 5, which enjoined the express companies from putting into effect the special tariffs presented on August 25, "or any of the rates, fares or charges specified in said tables between the cities of Aberdeen, Mitchell, Sioux Falls, Watertown or Yankton in the State of South Dakota and other stations of said express companies in said State . . . or . . . charges greater . . . than the maximum rates . . . of . . . Distance Tariff No. 2 . . . unless or until a schedule of express rates shall have first been submitted to the Board of Railroad Commissioners of the State of South Dakota and have been regularly approved and allowed by said board in conformity to the laws of the State of South Dakota." [1]

A petition for writ of error to this court was allowed December 11, 1916. The record was filed here January 27, 1917, and included in it is the opinion of the Supreme Court of South Dakota filed in the cause January 20, 1917. The reasons there given for holding that the order of the Interstate Commerce Commission is no justification for disregarding the order of the Board of Railroad Commissioners of South Dakota embody in substance the argument made here on behalf of the State's officials.

tiffs would not be entitled to a temporary writ of injunction and therefore declines to pass on the plea to the jurisdiction. . . ." See also *Brown Drug Co.* v. *United States*, 235 Fed. Rep. 603.

[1] On December 5, 1916, the defendants had also applied for dissolution of the restraining order, alleging, among other things, that the United States had instituted suit against them in the District Court of the United States for the Southern District of New York to recover the penalties prescribed by Congress, to wit, $5,000 a day for failure to comply with the order of the Interstate Commerce Commission; and that they were liable to further suits.

1. *The nature of the Interstate Commerce Commission's order.*

In its specific direction the order merely prohibits charging higher rates to and from Sioux City than to and from the five South Dakota cities. It could be complied with (a) by reducing the interstate rates to the South Dakota scale or (b) by raising the South Dakota rates to the interstate scale or (c) by reducing one and raising the other. until equality is reached in an intermediate scale. The report (which is made a part of the order) contains, among other things, a finding that the interstate rate which was prescribed by the Commission was not shown to be unreasonable. This finding gives implied authority to the express companies both to maintain their interstate rates and to raise, to their level, the intrastate rates involved. *The Shreveport Case (Houston, East & West Texas Ry. Co.* v. *United States),* 234 U. S. 342. For, if the interstate rates are maintained, the discrimination can be removed *only* by raising the intrastate rates.

But the finding that discrimination exists and that the interstate rates are reasonable does not necessarily imply a finding that the intrastate rates are unreasonable. Both rates may lie within the zone of reasonableness and yet involve unjust discrimination. *Interstate Commerce Commission* v. *Baltimore & Ohio R. R. Co.,* 145 U. S. 263, 277. Proceedings to remove unjust discrimination are aimed directly only at the *relation of rates.* If in such a proceeding an unreasonable rate is uncovered and that rate made reasonable, it is done as a means to the end of removing discrimination. The correction is an incident merely.

2. *The power of the Interstate Commerce Commission.*

The Supreme Court of South Dakota declares:

"If the purported order of the Commission does, in any respect, regulate intrastate commerce, it is to that extent

void owing to the Commission's want of jurisdiction over the subject-matter."

That court denies not only the intent of Congress to confer upon the Commission authority to remove an existing discrimination against interstate commerce by directing a change of an intrastate rate prescribed by state authority; but denies also the power of Congress under the Constitution to confer such power upon the Commission or to exercise it directly. The existence of such power and authority should not have been questioned since the decision of this court in the *Shreveport Case.*

It is also urged, that even if the Commission had power, under the circumstances, to order a change of the intrastate rates, the order in question was invalid, because the Commission instead of specifically directing the change undertook to give to the carrier a discretion as to how it should be done and as to the territory to which it should apply. The order properly left to the carriers discretion to determine *how* the discrimination should be removed; that is, whether by lowering the interstate rates or by raising the intrastate rates or by doing both. In its general form the order is identical with that under consideration in the *Shreveport Case.* Where a proceeding to remove unjust discrimination presents solely the question whether the carrier has improperly exercised its authority to initiate rates, the Commission may legally order, in general terms, the removal of the discrimination shown, leaving upon the carrier the burden of determining also the points to and from which rates must be changed, in order to effect a removal of the discrimination. But where, as here, there is a conflict between the federal and the state authorities, the Commission's order cannot serve as a justification for disregarding a regulation or order issued under state authority, unless, and except so far as, it is definite as to the territory or points to which it applies. For the power of the Commission is dominant

only to the extent that the exercise is found by it to be necessary to remove the existing discrimination against interstate traffic. Still, *certum est quod certum reddi potest.* Whether the order here involved is definite, presents a question of construction which will be considered later.

3. *The requirements of the state law.*

The South Dakota statute (1911, c. 207, § 10, as amended 1913, c. 304) provides that no advance in intrastate rates may be made except after thirty days' notice to the Board of Railroad Commissioners by filing of schedules, and to the public by publication and posting in every office of the carrier in the State. The special tariff here in question, which was presented to the Board informally at conferences in July, was not formally offered for filing until August 25. It was, by its terms, to take effect September 15; and notice to the public was not made as provided in the statute. But these provisions cannot be held to apply to changes in intrastate rates over which the Board has no control. The proper conduct of business would suggest the giving of some notice (as was done by the express companies in the instant case); but a valid order of the Commission is, when applicable, a legal justification for disregarding a conflicting regulation of the state law— because the federal authority is dominant.

4. *The scope of the order.*

If the general words of the order are read alone, they might perhaps be understood as applying to rates between the five named South Dakota cities and *all* other "points" in South Dakota. But the order explicitly makes the report which is filed therewith a part thereof; and the order itself also qualifies the general words used, by the clause: "which said relation of rates has been found by the Commission to be unjustly discriminatory." The report makes it thus perfectly clear that the order applies only to the "points" in competitive territory or,

as the Supreme Court expresses it, those "commercially tributary" both to the five cities and to Sioux City. That territory, as the report also shows, is the southeastern part of South Dakota; and as to this alone, the discrimination was found to exist. The express companies were not warranted by anything in the order in extending the special tariffs of rates, to and from the five cities to include "points" in every part of the State. As to all rate advances other than those in the competitive territory, their action was unauthorized.

It is urged on behalf of the state officials that the order does not show with the necessary precision to what "points" it applies; and that if not wholly void for indefiniteness, it at least cannot serve as a justification for failure to observe the regulations and orders imposed by authority of the State. In cases of this nature, where the dominant federal authority is exerted to affect intrastate rates, it is desirable that the orders of the Interstate Commerce Commission should be so definite as to the rates and territory to be affected as to preclude misapprehension. If an order is believed to lack definiteness an application should be made to the Commission for further specifications. But the order although less explicit than desirable is, when read in connection with the railroad map, not lacking in the requisite definiteness. As the order is limited to the relation of rates to and from Sioux City and to and from the five South Dakota cities "under substantially similar circumstances and conditions and for substantially equal distances," and the report states that the American Express Company operates "over the lines of the Chicago and Northwestern Railway Company and the Chicago, St. Paul, Minneapolis and Omaha Railway Company," and that the Wells Fargo & Company operates "over the Chicago, Milwaukee and St. Paul Railway Company," it furnishes the necessary data for adjusting the rates in controversy.

5. *The jurisdiction of the state court.*

It is urged that the Supreme Court of South Dakota erroneously assumed jurisdiction, because this proceeding is an attack upon an order of the Interstate Commerce Commission; that by the Act of Congress (36 Stat. 539, 540, 543) exclusive power "to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission" was vested in the Commerce Court; and that by the Act of October 22, 1913, abolishing that court (38 Stat. 219), the exclusive power was transferred to the several District Courts. If this were a proceeding professedly "to enjoin, set aside, annul, or suspend" an order of the Commission "in whole or in part," a state court would obviously have no jurisdiction. The bill does not purport to attack, nor does it even refer to, any such order. It alleges only that the express companies propose "increases and advances" in charges for intrastate transportation, by introducing "existing interstate rates." It is the answer which sets up the order of the Commission as a justification; and plaintiffs deny that it is such. Whether or not the state court has jurisdiction cannot, of course, depend upon the professed purpose of the proceeding nor upon the mere form of pleading. An order may be as effectively annulled by misconstruction as by avowedly setting it aside. But we have no occasion to determine in the instant case, under what circumstances and to what extent, the effect of orders of the Commission may be questioned in state courts. The answer does not allege that *all* the intrastate rates to and from the five cities which have been advanced were advanced in compliance with the order of the Commission. It alleges merely that the rates applied were those prescribed "for interstate traffic between points within and points without the State of South Dakota"; [1] and it is clear that the

---

[1] The claim that the express companies attempted to make *only* those changes which were required to comply with the order of the Commis-

special tariffs here in question include advances of rates between the five cities and many "points" in the State to which the Commission's order did not apply. It could not, therefore, afford a justification for putting into effect those intrastate rates without first making the publication required by the state law and securing the approval of the State Board. These rates the Supreme Court of South Dakota had jurisdiction to enjoin, and the decree must be affirmed to that extent. It is also clear that the decree of the Supreme Court, in so far as it enjoined the express companies from advancing *any* intrastate rate to and from the five cities until the same shall have been approved by the South Dakota Board of Railroad Commissioners, was erroneous. So far as it extends to rates in the competitive territory as to which discrimination was found to exist, it must be modified and the injunction dissolved. With this modification the decree of the state court is affirmed and the cause remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE McKENNA dissents.

---

sion was first explicitly made in the petition for writ of error to this court. There was, however, in the motion filed December 5, to dissolve the restraining order, a general allegation that the express companies "were ordered to put into effect the rates restrained" by the state court.