**GEORGIA PUBLIC SERVICE COMMISSION et al. v. UNITED STATES et al.**

Nos. 563, 565.

District Court, N. D. Georgia, Atlanta Division.

July 5, 1930.

S. J. Smith, Jr., of Atlanta, Ga., Walter, Burchmore & Belnap, of Chicago, Ill., and Watkins, Asbill & Watkins, of Atlanta, Ga., for plaintiffs.

Elmer B. Collins, E. M. Reidy, and Daniel W. Knowlton, all of Washington, D. C., and McDaniel & Neely and Alston, Alston, Foster & Moise, all of Atlanta, Ga., for defendants.

Before BRYAN, Circuit Judge, and SIBLEY and BORAH, District Judges.

SIBLEY, District Judge.

Our opinion in this case refusing a preliminary injunction is reported 39 F.(2d) 169. A hearing for final decree has now been had with the record of the proceedings before the Interstate Commerce Commission in evidence. The evidence leads us to no different conclusion. We adhere to what was said in the previous opinion. In it two matters were indicated in whose consideration the evidence might be helpful. The one respecting the lowness of the level of the rates for distances over two hundred miles, as compared with those under two hundred miles, has not been further argued in briefs or orally, and we treat the contention as abandoned. The other is involved in the question which was most discussed, to wit: Whether the Commission prescribed a certain and lawful minimum for intrastate rates in fixing as such the interstate rates actually maintained by the carriers on December 9, 1929, the date of the order here attacked. 160 I. C. C. 309. When the Commission, after the hearing required by section 13(4) of the Commerce Act (49 USCA § 13(4), undertakes to prescribe a rate, or a maximum or a minimum for intrastate commerce, its order must be certain and capable of practical application. American Express Co. v. South Dakota ex rel. Caldwell, 244 U. S. 617, 37 S. Ct. 656, 61 L. Ed. 1352; Illinois Cent. R. R. Co. v. Public Utilities Commission, 245 U. S. 493, 38 S. Ct. 170, 62 L. Ed. 425.

As previously held, a maximum and minimum were undertaken to be fixed by the order of December 9, 1929. The maximum, identical with that previously fixed for interstate commerce in 122 I. C. C. 133, is a scale based on distances, higher for joint-line than for single-line hauls, and is accepted as sufficiently certain and practical. Under it the carriers had on December 9, 1929, established a system of rates between points in Georgia and points in other states which were prescribed as the intrastate minimum. These rates are embraced in several tariffs filed with the Commission and in evidence. They consist of hundreds of point-to-point rates between named places in Georgia and in other states. Then for all points not thus specially named the scale fixed by the Commission as the maximum is estab-

lished as the rate. It is asserted, and we assume it to be true, that the vast majority of these point-to-point rates are mere applications of the scale, joint or single line as the case might be, to the distances involved. So far, therefore, the actual rates are nothing but the maximum scale. Where, however, there are several routes between two points, the Commission, in its order establishing the interstate scale, had directed that all routes not circuitous beyond a fixed per cent. might take the same rate and the lowest over any route, joint or single line, by which carload freight might move without transfer of lading. When a circuitous route thus took a rate less than called for by its mileage, the Commission also provided for maintenance of the scale rates to intermediate points which were noncompetitive, notwithstanding the long and short haul provision of section 4 of the Act (49 USCA § 4). Many of the point-to-point rates to competitive and intermediate points as filed were made under these provisions. It is these departures from the maximum scale which are claimed to make the actual rates uncertain and contradictory as a minimum for intrastate rates, especially in view of the difference for single and joint line hauls. This contention was strongly urged before the Commission and is dealt with by its report in 160 I. C. C. at pages 323 and 324. The Commission there states that the departures from the maximum scale are all to be thus accounted for, or are errors to be corrected, and, as we understand the Commission, they express an expectation that similar modifications will be made in intrastate rates under the like circumstances. Otherwise the interstate scale would simply have been made the intrastate rate. The evident purpose of the Commission was to equalize rates in interstate and intrastate commerce, distance considered, under similar circumstances and conditions. Because of the close competition and the large figure which the rate cuts in the price of the commodity here involved, slight additions in the rate are found to affect vitally the business done. Hence the necessity, from the standpoint of shippers, of substantial equality between the rates under similar circumstances, to prevent discrimination between intrastate and interstate commerce. We see nothing to hinder the Georgia State Commission from causing the establishment of intrastate rates which will follow the same principles that were applied in fixing interstate rates where competition justifies departure from the maximum scale. Had the Commission prescribed a fixed intrastate scale, the State Commission, or the carriers, would have been bound to establish it forthwith. When instead a maximum and minimum are fixed, as is allowed by section 13(4), 49 USCA § 13(4), the fixing of the exact rates within these limits is to be done by the State Commission on its usual procedure. If the result in any instance is thought contrary to the order of the Interstate Commerce Commission, the latter may be applied to for further or clarifying order in the premises.

Evidence is offered, and objected to, that the carriers are seeking to establish as the scale for intrastate rates the bare maximum scale fixed for interstate rates. Our sole jurisdiction at present is to enjoin or set aside the order of the Interstate Commerce Commission, if unlawful. We cannot fix, or aid in fixing, the intrastate rates. It seems to us, however, plain that the carriers would not be entitled to set up the maximum scale without application of the modifications above discussed with reference to competitive points. This would not secure the equality of rates under similar circumstances aimed at by the Commission, but would produce discrimination in favor of interstate against intrastate commerce, which the Commission would have no power to cause. The Commission refused to establish the scale as the intrastate rate, but only made it the maximum, thus indicating that departures were allowed to conform with the actual interstate rates which were named as minimums. The State Commission has the remedy in its own hands to require the establishment of rates which will really conform to the rates maintained in interstate commerce by applying the above-discussed principles in reference to competitive and intermediate points.

Strong objection is raised to the complication of having a different scale for joint and single line hauls of crushed stone, sand, etc., especially since the differential has been abolished in most other rates. Southern Class Rates, 100 I. C. C. at pages 627 and 628; Southern Fertilizer Rates, 113 I. C. C. 389, 425. As we said in Alabama v. United States, 42 F.(2d) 469, just decided, there are sound reasons for saying that there is extra cost in handling a car over a joint line and this extra cost is most important to the carriers in this lowest of rates. Whether compensation for the extra cost shall be had in a separate joint scale of rates or in a slightly higher average of rates is within the competency of the Commission to decide.

Some uncertainty of necessity exists whenever a maximum and minimum is prescribed for intrastate rates by the Commission instead of direct prescription of the rates, but the uncertainty leaves liberty of action to that extent to the State Commission. We think the order here attacked, in spite of its alleged uncertainties and complications, can be practically applied so as to obtain a substantial parity of interstate and intrastate rates by it, and that it should not be set aside. A decree has accordingly been entered dismissing the bill.