Commonwealth ex rel. *v.* Central R. R. Co. of New Jersey et al., Appellants.

Argued May 23, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edwin A. Lucas,* with him *Dickson, Beitler & Mc-Couch,* for appellant.—It should be held that the constitutional and statutory provisions in Pennsylvania, in so far as class rate traffic is concerned, must yield to federal authority: Wisconsin R. R. Commission v. R. R., 257 U. S. 563; Nashville Ry. v. Tennessee, 262 U. S. 318; United States v. Hubbard, 266 U. S. 474; Alabama v. 279 U. S. 229; Dayton-Goose Creek Ry. v. U. S., 263 U. S. 456; Railroad Commission v. R. R., 264 U. S. 331; Texas & Pac. Ry. v. Ry., 270 U. S. 266; Colorado v. United States, 271 U. S. 153; United States v. R. R., 272 U. S. 457.

This court should decree the unlawfulness of conference ruling No. 2 of the public service commission of Pennsylvania: Louisville & Nashville R. R. v. Eubank, 184 U. S. 27.

The proposed new class rates constitute a reasonable zone system of charges within the proviso of the public service company long and short haul clause.

*E. Everett Mather, Jr.,* assistant counsel to the Public Service Commission, with him *John W. Fox Weiss,* counsel to the Public Service Commission and *William A. Schnader,* Attorney General, for the Commonwealth, appellee.—Constitutional requirement does not burden interstate commerce: Minnesota Rate Case, 230 U. S. 352; Wisconsin Passenger Fare Case, 257 U. S. 563.

Interstate commission would not tolerate such rates interstate.

The interstate commerce commission in passing on applications of this sort has said, time and time again, that the unnecessary hauling of traffic over unduly circuitous routes at the same rates as are applicable over direct routes results in wasteful transportation and, that, as a general rule, the commission will not grant relief from the requirements of section four to lines of extreme circuity in order to permit them to meet competition of direct lines.

The Pennsylvania's route from Harrisburg to Reading is 130% longer than the Reading's or more than twice as long.

Conference ruling No. 2 is not involved in this procedure. Louisville & Nashville R. R. v. Eubank, 184 U. S. 27.

The rates involved do not constitute a zone system within the meaning of the proviso to the long-and-short-haul clause of the Public Service Company Law.

Main-line points may be intermediate to branch-line destinations under the Constitution: Great Northern Ry. v. Delmar, 283 U. S. 686.

OPINION BY MR. JUSTICE SIMPSON, June 30, 1932:

The railroad companies, which are defendants in this case, appeal from a decree enjoining them from putting into force proposed new tariffs, in so far as they prescribe higher intrastate rates for carrying freight of the same class to a nearer station than for carrying it on the same tracks in the same direction to a more distant

station, all the trackage being within this Commonwealth. The court below decided that to permit defendants so to do, would result in their violating article XVII, section 3, of the state Constitution, which, so far as relevant, provides that "Persons and property transported over any railroad shall be delivered at any station at charges not exceeding the charges for transportation of persons and property of the same class in the same direction to any more distant station."

Appellants expressly admit that the proposed tariffs, if put into effect, would violate this provision of the Constitution, but nevertheless claim they should be given the right so to do, because the interstate commerce commission, in what is known as the eastern class rate investigation, has determined that the class rates which may be charged in interstate commerce, by all carriers to points served by two or more of them, shall be computed by "the shortest routes......over which carload traffic can be moved without transfer of lading" (134 I. C. C. 314; 171 I. C. C. 481) and that appellants' proposed new tariffs apply only to transportation to the points affected by this conclusion of the interstate commerce commission. They contend that therefrom an inevitable conclusion arises that to apply the constitutional provision as to those points would result in imposing upon such interstate traffic an undue burden, and hence it must give way to the paramount right of the Federal Government in matters relating to interstate commerce.

Though not really necessary, it may not be unwise to set forth one of the cases to which the proposed new tariff is intended to apply. Admittedly, it is a typical case. There are two railroads which carry freight from Harrisburg to Reading. One is the Reading Railroad, which travels in an easterly direction, the total distance being 54 miles. Under the ruling of the commission above referred to, only that distance would be allowed in computing the class rates for interstate freight, orig-

inating outside of Pennsylvania and passing through Harrisburg to Reading, no matter by what route it traveled while in this State. The other railroad is the Pennsylvania, whose tracks run southeastwardly to Frazer, then northeastwardly to Phœnixville, and then northwestwardly through Royersford, Pottstown and Birdsboro to Reading. The total mileage of this route is 123 miles. To meet the competition with the Reading, the Pennsylvania charges and proposes to continue charging the same intrastate freight class rates from Harrisburg to Reading, over its 123 miles of trackage, as the Reading does over its 54 miles of track, instead of sending it over the Reading road to that city. To recoup some of the resulting losses arising from this voluntary act, the Pennsylvania proposes, in violation of the constitutional provision, to charge a higher class rate to all the intermediate points on its route between Frazer and Reading than it does to Reading itself. It may not be amiss, though this also is immaterial in the view we take of the case, to specify in a footnote some of the decisions in which the interstate commerce commission has held that it will not grant relief to a carrier which uses a route of such great circuity, in order to permit it to meet competition with a direct line.* This would seem

---

* Sugar Rates from New Orleans, 32 I. C. C. 606; Fourth Section Applications, Nos. 2072 and 10800, 46 I. C. C. 475; Rates between Central Freight Ass'n Territory and Points on Chesapeake & Ohio Ry., 47 I. C. C. 576; Memphis Southwestern Investigation, 77 I. C. C. 473; Fort Worth Cotton Oil Mill v. A., T. & Santa Fe Ry. Co., 80 I. C. C. 18; Fort Worth Freight Bureau v. Director General, 80 I. C. C. 237; Oklahoma Corp. Comm. v. Arkansas Ry., 80 I. C. C. 607; Wool Rates Investigation, 91 I. C. C. 235; Class Rates between Missouri and Interstate Points, 100 I. C. C. 274; Petroleum from St. Louis Group Points to Southern Points, 102 I. C. C. 756; Class & Commodity Rates between Trunk Line Territory and Points West of Missouri River, 104 I. C. C. 578; Brick & Clay Products to and between Points in Southern Territory, 113 I. C. C. 380; Ogden Grain Exchange v.

to be a wise, if not a necessary conclusion, when we consider the reason why railroads are organized and are given the great powers statutorily vested in them, and the purpose of the formation and the controlling power given to the federal and state regulatory commissions.

It is further expressly admitted by appellants, that there is nothing "at all in the interstate commerce commission's order which deals with the intrastate rates that shall be applied in Pennsylvania," and our own investigation shows this to be so; but it is alleged that the commission "has merely recommended that intrastate rates shall be the same as interstate rates." We are not told by whom or how this recommendation was made, and the record in this case fails to disclose it. It is not probable, however, that the statement had any reference to a case involving the long and short haul clause, since, by section 4 of the Interstate Commerce Act, 49 U. S. Code section 4 (1), the commission is itself forbidden to allow "any greater compensation...... for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance......[except] in special cases, *after investigation,*" which, admittedly, has never been made, so far as concerns appellants' contention that, unless our constitutional provision is ignored, an undue burden will be imposed on interstate traffic. This, also, is beside the point on which we shall rule the present appeal.

The time has long since passed when any one would be heard to deny that the power given to Congress by article I, section 8, of the Constitution of the United States "to regulate commerce......among the several states,"—whether this is done directly or through the interstate commerce commission, acting within the scope

Abilene & Southern Ry. Co. 122 I. C. C. 691; Fourth Section Departures on Salt, 123 I. C. C. 73; Commoditty Rates on Lumber and other Forest Products. 151 I. C. C. 763.

of the powers granted to it,—is paramount as to interstate commerce; and, so far as applicable, is "the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding:" Article VI of that Constitution. On this record, however, the primary question is: How far, if at all, is our long and short haul constitutional clause affected by the Interstate Commerce Act, its amendments and supplements?

Prior to the Transportation Act of 1920, this question was not an open one. In Louisville & Nashville R. R. Co. v. Kentucky, 183 U. S. 503, 518, it is said of a similar section in the Constitution of Kentucky: "It is plain that the provision in question does not in terms embrace the case of interstate traffic. It is restricted in its regulation to those who own or operate a railroad within the State......The particular case before us is one involving only the transportation of coal from one point in the State of Kentucky to another, by a corporation of that state. It may be that the enforcement of the state regulation forbidding discrimination in rates in the case of articles of a like kind carried for different distances over the same line may somewhat affect commerce generally; but we have frequently held that such a result is too remote and indirect to be regarded as an interference with interstate commerce; that the interference with the commercial power of the general government to be unlawful must be direct, and not the merely incidental effect of enforcing the police powers of a state: New York, Lake Erie & Western Railroad v. Pennsylvania, 158 U. S. 431, 439; Henderson Bridge Co. v. Kentucky, 166 U. S. 150. A discussion of this subject will be found in the opinion of this court in Louisville & Nashville R. R. v. Kentucky, 161 U. S. 677, 701, where the same conclusion was reached." This conclusion was affirmed in the later cases of Louisville & Nashville R. R. Co. v. Eubank, 184 U. S. 27, 33; Missouri Pacific

Ry. Co. v. McGrew Coal Co., 244 U. S. 191, and between the same parties in 256 U. S. 134.

No later opinion of the Supreme Court of the United States antagonizes the views thus expressed unless it be Wisconsin R. R. Commission v. Chicago, Burlington & Quincy R. R. Co., 257 U. S. 563, relied on by appellants, which was not a long and short haul case. None of the cases just referred to is cited or considered in that opinion, possibly because the point ruled in them was not then under review. To appellants' argument, based as it is on the general language of the opinion, perhaps we might apply the statement of Chief Justice MARSHALL in Cohens v. Virginia, 6 Wheaton 264, 399, which has been quoted with approval in Weyerhæuser v. Hoyt, 219 U. S. 381, 394, and in numerous other cases: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used......The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Inasmuch, however, as the decision in Louisville & Nashville R. R. Co. v. Kentucky, 161 U. S. 677, and the others in its train, above cited, may not have been referred to in Wisconsin R. R. Commission v. Chicago, Burlington & Quincy R. R. Co. supra, only because the point decided in the earlier cases was not then directly under review, we do not base our judgment on them, but turn at once to that which we think is conclusive here.

The decision in the Wisconsin R. R. Commission Case is based on subsections 3 and 4, added to section 13 of the Interstate Commerce Act by the Transportation Act of 1920, 49 U. S. Code section 13 (3) and (4), which provide that "Whenever in any investigation under the provisions of this act, or in any investigation instituted

upon petition of the carrier concerned, which petition is hereby authorized to be filed,......the commission, after full hearing, finds that any such rate, fare, charge, classification, regulation, or practice causes any undue or unreasonable advantage, preference, or prejudice as between persons or localities in intrastate commerce on the one hand and interstate or foreign commerce on the other hand, or any undue, unreasonable, or unjust discrimination against interstate or foreign commerce, which is forbidden and declared to be unlawful, *it shall prescribe the rate, fare, or charge, or the maximum or minimum, or maximum and minimum, thereafter to be charged,* and the classification, regulation, or practice thereafter to be observed, in such manner as, in its judgment, will remove such advantage, preference, prejudice or discrimination. Such rates, fares, charges, classifications, regulations, and practices shall be observed while in effect by the carriers parties to such proceeding affected thereby, the law of any state or the decision or order of any state authority to the contrary notwithstanding." Assuming, but not deciding, that the words "the law of any state," as there used, should be construed to include the constitution of any state, then, in a proceeding instituted and carried on in the way the Transportation Act of 1920 provides, the long and short haul constitutional provision must be subordinated to the order of the commission, to the extent, if at all, that the commission has in fact "prescribed," but only to that extent, for not otherwise can the statute be construed to affect the preëxisting status of the state constitutional provision. Inasmuch, therefore, as the commission has not "prescribed" any rate, fare or charge for appellants' intrastate commerce as between any of the termini referred to in these proceedings, the constitutional inhibition remains in full force and effect, and appellants' attempt to decide this matter for themselves, without any action of the commission, necessarily is of no validity, and they must comply,—until and unless

the commission decides otherwise,—with our constitutional long and short haul clause exactly as the cases prior to the Transportation Act of 1920 decided that they must.

If it were important to consider the reason for this limiting provision in the Transportation Act of 1920, it would not be difficult to find. The question involved in this class of cases, like the interstate commerce provision itself, is not bounded by state lines, but is nationwide, and whether or not interstate commerce is unduly affected by any state constitution is to be determined from a broad consideration of the interstate commerce alleged to be injuriously affected. In its determination, as in all other rate cases, the shippers, interstate and intrastate, are both entitled to be heard as fully as are the railroads. No state judicial tribunal is clothed with the power of duly notifying all such interested parties. For this reason, it has always been held, even before the Transportation Act of 1920, that the matter was one for the commission and not for the courts, and that the latter's only power in regard to the matter was to enforce or enjoin the definite orders of the commission.

In Transportation Co. v. Parkersburg, 107 U. S. 691, 701, it is said: "It is congress, and not the judicial department, to which the Constitution has given the power to regulate commerce with foreign nations and among the several states. The courts can never take the initiative on this subject." So, also, in The Minnesota Rate Cases, 230 U. S. 352, 419, we find that "the question whether the carrier, in such a case, was giving an undue or unreasonable preference or advantage to one locality as against another, or subjecting any locality to an undue or unreasonable prejudice or disadvantage, would be primarily for the investigation and determination of the interstate commerce commission *and not for the courts*. The dominating purpose of the statute was to secure conformity to the prescribed standards through the examination and appreciation of the complex facts

of transportation by the body created for that purpose; and, as this court has repeatedly held, it would be destructive of the system of regulation defined by the statute, if the court, without the preliminary action of the commission, were to undertake to pass upon the administrative question which the statute has primarily confided to it [citing cases]. In the present case, there has been no finding by the Interstate Commerce Commission of unjust discrimination violative of the act; and no action of that body is before us for review." So also in Houston, East & West Texas Ry. Co. v. United States, 234 U. S. 342, 358, it was again held, quoting from the Minnesota Rate Cases, supra, that the matter there being considered, viz., the question of the regulation of intrastate rates, in order that no undue burden should rest on interstate commerce, was "primarily for the investigation and determination of the Interstate Commerce Commission, *and not for the courts.*" Again in Illinois Central R. R. Co. v. State Public Utilities Com. of Illinois, 245 U. S. 493, 510, it is said: "In construing federal statutes enacted under the power conferred by the commerce clause of the Constitution, the rule is that it should never be held that Congress intends to supersede or suspend the exercise of the reserved powers of a state, even where that may be done, unless, and except so far as its purpose to do so is clearly manifested [citing cases]. This being true of an Act of Congress, it is obvious that an order of a subordinate agency, such as the commission, should not be given precedence over a state rate statute otherwise valid [a fortiori not over a state constitutional provision], unless, and except so far as, it conforms to a high standard of certainty." That statement is quoted with approval in Wisconsin R. R. Commission v. Chicago, Burlington & Quincy R. R. Co. supra, at page 580, upon which appellants rely, and is adopted, but in somewhat different language, in American Express Co. v. South Dakota ex

rel. Caldwell, 244 U. S. 617, which is also quoted and approved in the Wisconsin Railroad Commission Case.

In the instant case, as we have already pointed out, the rates which defendants now propose to charge, in violation of our state constitutional provision, have not been considered or passed upon by the interstate commerce commission; though, as we were advised at bar, appellants, immediately following the granting of the injunction in this case, petitioned that tribunal for the same relief they claim herein, which proceeding is still pending and undetermined. There only, if at all, must they primarily be adjudged entitled to such relief.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellants; without prejudice, however, to any other or further proceedings after final action by the federal authorities.

DISSENTING OPINION BY MR. JUSTICE KEPHART:

I dissent from the decision of the majority in this case for two reasons. First, because the restraining order tends to disrupt the uniformity of the class rates prescribed by the interstate commerce commission for this territory, and thereby unjustly and prejudicially burdens interstate class rate commerce. As a result the injunction is virtually an order to regulate interstate traffic through state regulation.

Second, I do not believe the constitutional provision applies as quoted: "Persons and property transported over any railroad shall be delivered at......charges not exceeding the charges for......the same class in the same direction to any more distant station." My contention is that Reading is not in the same direction from Harrisburg as Coatesville or Philadelphia is, and that the Constitution should receive a workable construction. Otherwise, the application of the first part of this same article and section, namely, "there shall be no discrimination," forces a revision of tariffs under this injunction from Coatesville and Parksburg to Harrisburg, which

makes it absolutely unworkable and confiscatory to the railroad. When the Constitution was adopted the framers had no such thought in mind as the question here presented or the competition between railroads.

I disagree with the illustration of fact given in the majority opinion. It does not state fully the whole picture, as I view it, and it does not state that the rate from Harrisburg to Reading is the rate which is fixed under the order of the interstate commerce commission on its interstate scale of charges.

The provision which enables the railroads to go to the interstate commerce commission and secure an express order for what is now to all intents and purposes such an order is to require an unnecessary act.

I would reverse the court below and hold that the constitutional provision does not apply, as I fully believe the injunction to be a most unjust and unfair order, working a great hardship on railroads.

Mr. Chief Justice FRAZER and Mr. Justice SCHAFFER concur in the dissent.