Mobile & O. R. Co. *v.* Mississippi Public Service Commission.

(Division A. April 8, 1940.)

[195 So. 305. No. 33889.]

Rufus Creekmore, of St. Louis, Mo., for appellant.

**Russell Wright,** Assistant Attorney-General, for appellee.

701

**Griffith, J.**, delivered the opinion of the court.

After the decision and opinion by the Interstate Commerce Commission in re "Increases in Mississippi Freight Rates and Charges", particularly as regards sand and gravel, 229 I. C. C., pp. 755 to 764, and after appellant railroad had published its Tariff No. 14700, which it claimed was in compliance with the decision and opinion aforesaid, and not in excess of the minimum rates therein prescribed, and after the Interstate Commission had declined the application of the State to suspend said Tariff, the Mississippi Public Service Commission gave notice to the appellant and to two other interested railroads that the State Commission would conduct, at a day fixed in the notice, a hearing to determine whether the said Tariff No. 14700 was on a higher basis than the rates prescribed by the Interstate Commission, it being the purpose of the State Commission to prohibit rates in excess of those so prescribed.

On the hearing no witnesses were introduced by the

State Commission, but each of the three railroads presented its rate expert and there were two witnesses who came in behalf of certain shippers. The course of the record, as a result of this procedure, became a running fire of argument and opinion interspersed with facts, some relevant and some irrelevant, so that it is difficult to determine the point where argument merges into opinion and the latter into actual facts; and the peculiarly drawn order of the Commission which followed did not serve to lift the fog, but, if anything, made it denser. However, enough can be seen in the order that thereby the State Commission declared that the rates fixed by appellant railroad's Tariff No. 14700, except as to particulars which the Commission attempted to specify, were in excess of the minimum prescribed by the Interstate Commission, and therefore in unlawful excess of maximum rates allowed by the State Commission. From the order so made the Mobile & Ohio Railroad Company has appealed.

Appellant in its original brief before us argued that the findings of fact were not supported by sufficient evidence; not only, but that there was no competent evidence whatever to sustain the State Commission's order. The Attorney General in reply for the Commission admitted that the evidence did not support the finding that the rates published in appellant's Tariff No. 14700 were in excess of those fixed as a minimum by the Interstate Commission unless and until the tariff is construed in connection with the State Commission's previous order No. 5128; but this latter observation is of no aid inasmuch as neither the order No. 5128 nor any other order of the State Commission, nor any State statute may be permissibly construed or applied which would operate to impose rates upon the carriers at less than the mini-

mum prescribed by the Interstate Commerce Commission.

Upon a preliminary examination of the very unsatisfactory record, we came to the tentative conclusion that applying the rule, as above stated, to the admitted facts respecting mileage, both for the one line and the joint line hauls, there was no excess in Tariff No. 14700 over the minimum rates fixed by the Interstate Commission, insofar as the contents of that Tariff are shown in the present record of the facts. We thereupon called for additional briefs by a per curiam memorandum, which, in part, was as follows: "The rates complained of are either higher in fact than the minimum mentioned (in the Interstate Commission prescription) or they are not higher. The facts in this record which bear upon this issue and show it one way or the other should be specifically pointed to and analyzed. And when a fact is pointed to as showing a higher rate, how is that conclusion made out from the facts shown as facts from the record? The Court desires a disentangling of the facts from the web of opinion with which these witnesses have surrounded their expressions."

The Attorney General responded for the Commission but failed to specifically point out a single one of the stations on the main line of appellant railroad or on any of its three branch lines, in respect to which the rates of Tariff No. 14700 exceeded the minimum of the Interstate Commerce Commission rates. However, he did definitely simplify the issue here before us, as he conceives that issue to be, his language in his supplemental brief being as follows: "The only points affected by this entire proceeding are points on the line of the Mobile & Ohio and the rates complained of apply only from Columbus, Mississippi, to these points. There is no ques-

tion of switching charges in this case. This case involves rates only from Columbus to points on the Mobile & Ohio.''

We have, therefore, proceeded with a detailed examination and analysis for every one of the more than seventy stations dealt with on appellant's main line and branches; and applying both the one line and the joint line rates and taking the lower in each case we find that there is no evidence that the rates of Tariff No. 14700, taking Columbus as the basis point, exceed the Interstate Commission minimum even in a single instance.

If, then, there be anything in the complaint, other than above dealt with, which rests upon more than mere argument or opinion, it might be found in one of the other of the two following matters: (1) By construing the effort here being made as one to compel appellant railroad company to so promulgate its tariff rates on sand and gravel shipments originating in the entire Columbus area as to subject itself to the consequences of ''short hauling itself,'' at the option of shippers in the selection by them of the routes of shipment. An authority so to require, as applicable to the physical situation here presented, is not vested in the Interstate Commerce Commission, St. Louis, etc., Ry. Co. v. United States, D. C., 217 F. 80; United States v. Missouri Pac. R. Co., 278 U. S. 269, 49 S. Ct. 133, 73 L. Ed. 322, and that Commission can therefore exercise no such authority in fixing the minimum intrastate rates.

Nevertheless, when the Interstate Commission has occupied the intrastate field to the extent of prescribing minimum intrastate rates, the jurisdiction of the State Commission as regards rate-making is excluded from any part of that occupied area, and to the extent so actually occupied, that is to say, as to all the field below

and up to the minimum rates, and hence a resort cannot be had by the State Commission to any rule or device of its own which enters upon and deals with any issue, as respects rates, which lies within the area actually taken over by the Interstate Commission, even if otherwise the State Commission would have an authority not possessed by the Interstate Commission in the matter of requiring a railroad to short haul itself. Relief within the area occupied under the federal authority must be obtained from that authority, not by attempted state action.

Or (2), it may be—although the Attorney General seems to concede otherwise as shown by the above quotation from his supplemental brief—that what the State Commission was attempting to order was this: That when a carload shipment of sand or gravel has as its point of origin any of the stations on any other connecting railroad within the Columbus area, and which shipments are delivered via the other railroad to the Mobile & Ohio at Columbus, or at West Point or at any other junction station, the Mobile & Ohio must submit, so long as it is not thereby required to short haul itself, to a rate or rates computed on the Interstate Commission single-line mileage basis from the point of origin to the point of final destination on the Mobile & Ohio, and to disallow the computation of a rate from the point of origin on the other railroad to the junction delivery point on the Mobile & Ohio, and thence starting a new computation from the junction delivery to the point of final delivery, and adding the two together as the rate to be paid.

But if what is mentioned in the next above paragraph was what was intended, it has been so integrated with the other features herein above discussed that we can-

not undertake a separation, and it has not been suggested that we could or should do so: therefore, without passing upon and without prejudice to the matter mentioned in the said paragraph, we reverse the judgment in its entirety and dismiss the cause, so that if the matter is to be further pursued, it may be done on a new start upon definite issues, definitely presented and definitely adjudicated.

In American Express Co. v. State ex rel. Caldwell, 244 U. S. 617, 627, 37 S. Ct. 656, 661, 61 L. Ed. 1352, the federal Supreme Court said: ''It is urged on behalf of the state officials that the order does not show with the necessary precision to what 'points' it applies; and that if not wholly void for indefiniteness, it at least cannot serve as a justification for failure to observe the regulations and orders imposed by authority of the state. In cases of this nature, where the dominant Federal authority is exerted to affect intrastate rates, it is desirable that the orders of the Intrastate Commerce Commission should be so definite as to the rates and territory to be affected as to preclude misapprehension.''

We adopt that principle as regards orders made by the State Commission. There is as much ground for requiring a reasonable certainty and a fair precision in the orders of the State Public Service Commission in respect to rates as there is in requiring definiteness and precision in the decrees of courts; and unless these qualities are preserved in these rate orders, the courts may properly decline to aid in their enforcement.

Reversed and dismissed.

**Anderson, J.,** takes no part.