## LOUISIANA PUBLIC SERVICE COMMISSION ET AL. v. TEXAS & NEW ORLEANS RAILROAD CO. ET AL.*

No. 36.   Argued October 13, 1931.—Decided November 23, 1931.

---

\* Together with No. 37, *Louisiana et al.* v. *United States et al.*

126

*Mr. Wylie M. Barrow*, with whom *Messrs. Percy Saint*, Attorney General of Louisiana, *Lewis L. Morgan*, and *Michel Provosty* were on the brief, for the Louisiana Public Service Commission et al., appellants.

128

*Assistant to the Attorney General O'Brian,* with whom *Solicitor General Thacher* and *Messrs. Charles H. Weston, Daniel W. Knowlton,* and *J. Stanley Payne* were on the brief, for the United States et al., appellees.

*Mr. Harry McCall,* with whom *Messrs. Victor Leovy, Esmond Phelps,* and *R. E. Milling, Jr.,* were on the brief, for the Texas & New Orleans R. Co. et al., appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The Interstate Commerce Commission, June 3, 1929 (155 I. C. C. 247) and September 30, 1929 (157 I. C. C. 498) prescribed rates for the transportation of sand, gravel and other named commodities, hereafter referred to as road materials, in Arkansas, Oklahoma, Texas and that part of Louisiana west of the Mississippi, including certain points on the east bank of the river. The rates were based on straight mileage. Eight cents per ton was added for ferrying such of the traffic as crosses the Mississippi to and from the named points on the east bank. The rates were made to apply alike to interstate and intrastate transportation.

The commissions of Arkansas, Oklahoma and Texas, respectively, adopted for application therein the intrastate rates so prescribed. The carriers applied to the Louisiana Public Service Commission for authority to give them effect in that State. October 12, 1929, the commission adopted them as to traffic between points on and north of the Vicksburg, Shreveport & Pacific Railroad, and between that territory and points in western Louisi-

ana south of the railroad. It refused to apply them on traffic wholly within the territory south of the railroad or on the traffic between that part of the State and the specified places on the east bank of the river.

The first of these suits was brought by the carriers against the commission and its members to enjoin them from interfering with the application of these intrastate rates. The other was brought by the State and the commission to annul them. 28 U. S. C., § 47. A court of three judges heard the cases, held the rates valid, granted a permanent injunction in the first suit, No. 36, and dismissed the other, No. 37. 41 F. (2d) 293. The cases are here on direct appeal. § 345 (4).

Appellants seek reversal on the grounds that the inclusion of the allowance for ferrying the Mississippi gives preference to Galveston, Houston and other ports of Texas over New Orleans and Baton Rouge in Louisiana in violation of the Constitution, Art. I, § 9, cl. 6; that the Interstate Commerce Commission made no findings and had no evidence as to the cost of the ferry service; and that there is no evidence to warrant a finding that the lower intrastate rates in effect under state authority operate as a real and substantial obstruction to, burden upon or discrimination against interstate commerce.

The power of Congress to regulate interstate and foreign commerce is exclusive and has no limitations other than such as arise from the Constitution itself. *Gibbons* v. *Ogden*, 9 Wheat. 1, 197. The Congress may adopt measures effectually to prevent every unreasonable, undue or unjust obstruction to, burden upon or discrimination against interstate commerce whether it results from state regulation or the voluntary acts of carriers. *Shepard* v. *Northern Pac. Ry. Co.* (C. C. Minn.) 184 Fed. 765, 795; *Minnesota Rate Cases*, 230 U. S. 352, 398, 403, 432. *Texas & Pac. Ry. Co.* v. *United States* (Commerce Court) 205 Fed. 380, 388; affirmed *sub nom. Houston & Texas*

*Ry.* v. *United States,* 234 U. S. 342, 353. *American Express Co.* v. *Caldwell,* 244 U. S. 617, 624. *Illinois Central R. Co.* v. *Public Utilities Comm.,* 245 U. S. 493, 506. And it has empowered the Interstate Commerce Commission to prescribe intrastate rates in place of those found unduly to discriminate against persons or localities in interstate commerce or against that commerce, § 13 (3) (4), and to require the carriers to make and apply on intrastate transportation such reasonable charges as will produce its fair share of the amounts needed to pay operating expenses, provide an adequate railway system and yield a reasonable rate of return on the value of the property used in the transportation service. § 15a. *Wisconsin Railroad Comm.* v. *Chicago, B. & Q. R. Co.,* 257 U. S. 563, 585, 588. *Florida* v. *United States,* 282 U. S. 194, 210, 211.

The clause of the Constitution invoked is: "No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another; Nor shall Vessels bound to, or from, one State, be obliged to enter, clear, or pay Duties in another." The specified limitations on the power of Congress were set to prevent preference as between States in respect of their ports or the entry and clearance of vessels. It does not forbid such discriminations as between ports. Congress, acting under the commerce clause, causes many things to be done that greatly benefit particular ports and which incidentally result to the disadvantage of other ports in the same or neighboring States. The establishing of ports of entry, erection and operation of lighthouses, improvement of rivers and harbors and the providing of structures for the convenient and economical handling of traffic are examples. *Pennsylvania* v. *Wheeling & Belmont Bridge Co.,* 18 How. 421, 433–5. And see *Armour Packing Co.* v. *United States,* 209 U. S. 56, 80. The construction for which appellants contend would strip Congress of much of the power that it long has been accustomed to exert

132

and which always has been held to have been granted to it by the commerce clause. It is clear that the Constitution does not forbid the allowance for ferrying the Mississippi at Louisiana ports.

Neither the failure of the Commission separately to ascertain and state, nor the absence of evidence to show, the cost to carriers of the ferry service requires annulment of the rates prescribed for transportation between the places on the east bank of the Mississippi and points west of the river.

Those rates were made by adding eight cents per ton to the mileage scale which was applied generally throughout the above mentioned States. No rate specifically applies to the carriage across the river. The orders do not relate to divisions under § 15 (6) or to allowances under § 15 (13). Every railroad shipment requires two terminal services and the line haul. Shipments moving in carloads require switching at places of loading and unloading and frequently at intermediate points. Some require the use of floating equipment and other special facilities. Some are moved on stretches of line where, by reason of physical conditions, the service is performed at costs per mile much in excess of the average on other parts of the haul. Straight mileage schedules appropriately may be applied where conditions affecting transportation are reasonably uniform, but substantial additions to rates so made are necessary to cover extraordinary costs of service. While in the making of reasonable rates all the material facts are to be regarded, it has never been deemed necessary or practicable—if indeed it is at all possible—to ascertain in advance the cost to carriers of each of the various elements embraced in the transportation service. The Act does not require any such determination.

There was evidence to show:

The commodities in question are used chiefly for the construction, improvement and maintenance of highways.

Each of the States mentioned has an extensive system of highways and contemplates much construction, improvement and maintenance work. There are more than 300 sources of supply in the territory, and by far the larger part of the materials used in each State is produced therein. These commodities move in great volume and constitute substantially more than ten per cent. of the carriers' tonnage. In Louisiana there are many places where such materials are produced. About 98% of the improved highways in that State are constructed with gravel. There is a large part of western Louisiana in which no gravel is produced. Some road materials are hauled intrastate more than 240 miles, large quantities move from 100 to more than 140 miles and, as calculated by the Commission, the average is from .75 to 80 miles.

In Texas, Arkansas, and Oklahoma there is a number of places, not far from Louisiana boundaries, where large quantities of such materials available for use in that State are produced. Notwithstanding the relatively low applicable Louisiana intrastate rates, substantial quantities are shipped from these outside sources for use on roads in various parts of the State including the territory as to which the state authorities refused to adopt the scale of rates prescribed by the Interstate Commerce Commission. The Louisiana highway commission constructs about 500 miles of road annually and the parishes construct considerable additional mileage. In each year great quantities of road materials are and in the future will be required for road work in that State south of the Vicksburg, Shreveport & Pacific Railroad and west of the Mississippi. At shipping points throughout the whole territory prices per ton range about as follows: Washed gravel, from $0.60 to $1.15; clay gravel, $0.40 to $0.60; sand, $0.45 to $0.70; crushed stone, $1.00 to $1.50; shells, $1.20 to $1.40; chat, $0.25 to $0.35.

The Commission found in Louisiana three scales of intrastate rates applicable to these commodities. One applies to commercial shipments and is higher than that prescribed by the orders under consideration. One somewhat lower and on which comparatively little moves, covers shipments to municipalities for the construction of public buildings. The one here under consideration is the lowest; it applies to materials used in the construction of state and parish highways and city streets when the shipments are consigned to and the freight charges are paid by federal, state, parish or municipal governments. From 80% to 85% of all the traffic in such materials in western Louisiana moves on that scale. There is printed in the margin a comparison of these rates with those ordered by the Commission.[1]

---

[1] Comparison of Louisiana good-roads single-line scale and interstate single-line scale approved by the Commission in this proceeding.

| 1<br>Distance | 2<br>Louisiana good-roads scale | 3<br>Commission's scale | Per cent that column 2 is less than column 3 |
|---|---|---|---|
| 10 miles | 40 | 50 | 20 |
| 20 miles | 40 | 56 | 29 |
| 30 miles | 50 | 62 | 19 |
| 40 miles | 50 | 68 | 26 |
| 50 miles | 50 | 74 | 32 |
| 60 miles | 50 | 80 | 38 |
| 70 miles | 50 | 85 | 41 |
| 80 miles | 60 | 90 | 33 |
| 90 miles | 60 | 95 | 37 |
| 100 miles | 60 | 100 | 40 |
| 110 miles | 60 | 105 | 43 |
| 120 miles | 60 | 110 | 45 |
| 130 miles | 60 | 115 | 48 |
| 140 miles | 80 | 120 | 33 |
| 150 miles | 80 | 125 | 36 |
| 160 miles | 80 | 130 | 38 |
| 170 miles | 90 | 135 | 33 |
| 180 miles | 90 | 140 | 36 |
| 190 miles | 90 | 145 | 38 |
| 200 miles | 90 | 150 | 40 |
| Average | | | 35.25 |

The latter are about 150% of the former. For 80 miles, about the average intrastate haul,. the prescribed rates are higher by 30 cents per ton, for 100 miles 40 cents, 120 miles 50 cents, 140 miles 40 cents, and 200 miles 60 cents. Producers outside Louisiana are necessarily at disadvantage in respect of the sale and delivery within that State of such materials to the extent that the State rates are lower than the prescribed scale. In the course of the Commission's report it is said that the disparity between the two scales is bound to operate as a real discrimination against, and obstruction to, interstate commerce, and result in interstate shippers being unduly prejudiced and interstate commerce unjustly burdened. And in its ultimate findings the Commission states that the intrastate rates to the extent that they are lower, distance considered, than corresponding interstate rates would result in undue preference and advantage to shippers and receivers of freight in intrastate commerce within western Louisiana and in undue prejudice to shippers and receivers of freight in interstate commerce between points in Arkansas, Oklahoma and Texas and points in western Louisiana, and in unjust discrimination against interstate commerce.

The facts above stated are adequately supported by the evidence and are clearly sufficient to warrant the Interstate Commerce Commission in prescribing, under § 13(3) (4), the schedule of intrastate rates under consideration. *Florida* v. *United States, supra,* 208. *Alabama* v. *United States,* 279 U. S. 229; 283 U. S 776.

*Decrees affirmed.*