STATE OF OHIO et al. v. UNITED
STATES et al.

WHEELING & LAKE ERIE RY. CO. v.
SAME.
Nos. 1039, 1040.

District Court, S. D. Ohio, E. D.
Jan. 6, 1934.

See, also, 54 S. Ct. 452, 78 L. Ed. ——.

John W. Bricker, Atty. Gen., for the state of Ohio.

Donald C. Power, of Columbus, Ohio, for Public Utilities Commission of Ohio.

Clare Clan Crawford, of Cleveland, Ohio, for Wheeling & Lake Erie Ry. Co.

E. S. Ballard, of Chicago, Ill., for intervening plaintiffs.

Elmer B. Collins, Sp. Asst. to Atty. Gen., for the United States.

J. Stanley Payne, of Washington, D. C., for Interstate Commerce Commission.

Guernsey Orcutt, of Pittsburgh, Pa., for Baltimore & O. R. Co. and others.

John Fox Weiss, of Harrisburg, Pa., for Public Service Commission of Pennsylvania.

H. C. Hall and Alex M. Bull, both of Washington, D. C., for Robert C. Hill and others.

August Gutheim, of Washington, D. C., for Western Pennsylvania Coal Traffic Bureau and others.

Before HICKENLOOPER, Circuit Judge, and HOUGH and NEVIN, District Judges.

PER CURIAM.

Each of the present suits is brought to enjoin two orders of the Interstate Commerce Commission, and is, of course, filed under the Urgent Deficiencies Act of October 22, 1913, 38 Stat. 219, 28 USCA §§ 41 (28) to 48. The first of these orders,[1] issued May 2, 1933, under section 13 of the Interstate Commerce Act, as amended February 28, 1920 (c. 91, § 416, 41 Stat. 484 [49 USCA § 13]), required the increase of Ohio intrastate rates on bituminous coal from certain mining districts in eastern and southern Ohio to points of destination in Northeastern Ohio. The second order, issued May 9, 1933, required the increase in all Ohio intrastate rates on bituminous coal in the amount of the increase (known as the surcharge) authorized in interstate rates on bituminous coal by the Fifteen Per Cent Case, 178 I. C. C. 539, 179 I. C. C. 215, and 191 I. C. C. 361. The authorization of this surcharge expired, according to its terms, on September 30, 1933, and was not then renewed, and the surcharge has therefore been discontinued since that date. The validity of this second order has, we think, been conclusively established by the decisions of the United States Supreme Court since the present case was submitted; that is, the decisions on November 6, and 13, 1933, in United States et al. v. State of Louisiana et al., 290 U. S. 70, 54 S. Ct. 28, 78 L. Ed. 181, and State of Montana v. United States et al., 290 U. S. 593, 54 S. Ct. 125, 78 L. Ed. ——. See, also, Commonwealth of Kentucky v. United States (D. C.) 3 F. Supp. 778. Both because of this fact, and because of the discontinuance of the surcharge, we may limit our discussion and consideration here to the question of the validity of the first order above stated.

Through the years there has been established a finely balanced and nicely adjusted schedule of interstate and intrastate rates on bituminous coal from the Western Pennsylvania, Northern West Virginia, and Ohio coal mining districts, to Northeastern Ohio, with fixed differentials which have been regarded as essentially reasonable, in view of all the elements which must be considered in rate making. This rate structure with which we are here concerned was last considered by the Interstate Commerce Commission (prior to the investigations here involved) in Ohio-Michigan Coal Cases, 80 I. C. C. 663, decided June 8, 1923, and the readjustment then made existed in force until August 1, 1932, when the Ohio Public Utilities Commission reduced various intrastate rates to Northeastern Ohio, the reductions ranging from 4 to 29 cents per ton. This threw the entire rate structure out of balance, operated to create a competitive advantage in behalf of the Ohio mines and operators, and, by the same token, discriminated against interstate shippers, who had theretofore been in active competition for the business of the several destinations by placing them at a competitive disadvantage.

The Commission not only found that the Ohio intrastate rates were unduly preferential of Ohio shippers and localities and unduly prejudicial to interstate localities and shippers of bituminous coal, but also that the assailed rates "result and will result in undue, unreasonable, and unjust discrimination against interstate commerce in violation of section 13 of the act," in that the "Ohio intrastate traffic under these assailed rates is not contributing its just proportion to the revenues of the carriers, and by reason of that fact respondents are suffering substantial losses in their revenues to which they are justly entitled." Thus the decision of the case was placed by the Commission both upon the ground that the intrastate rates in question caused unreasonable advantage, preference, and prejudice as between persons and localities in intrastate commerce on the one hand, and interstate commerce on the other hand, and upon the ground that such rates caused undue and unreasonable discrimination against interstate commerce, as such. Both types of discrimination are forbidden by section 13.

In a case of this sort we are, of course, concerned only with the sufficiency of the evidence to support the fact finding of the Commission and the sufficiency of the facts found to support the conclusion of the order entered. While the Commission must act upon evidence and not arbitrarily, and must properly apply the law, the courts are not concerned with "the soundness of the reasoning by which its conclusions are reached, or wheth-

---

[1] Intrastate Rates on Bituminous Coal Within State of Ohio, 192 I. C. C. 413.

er the findings are consistent with those made by it in other cases." Nor are we concerned with the "wisdom" of the regulation which is prescribed. These are matters left by Congress exclusively to the administrative branch of the government. Among the great number of decisions to this effect, see Illinois Central R. Co. v. Interstate Commerce Commission, 206 U. S. 441–446, 27 S. Ct. 700, 51 L. Ed. 1128; Baltimore & O. R. Co. v. United States ex rel. Pitcairn Coal Co., 215 U. S. 481, 30 S. Ct. 164, 54 L. Ed. 292; Interstate Commerce Commission v. Delaware, L. & W. R. Co., 220 U. S. 235, 31 S. Ct. 392, 55 L. Ed. 448; Interstate Commerce Commission v. Union Pacific R. Co., 222 U. S. 541, 547, 32 S. Ct. 108, 56 L. Ed. 308; United States v. Louisville & Nashville R. Co., 235 U. S. 314, 320, 35 S. Ct. 113, 59 L. Ed. 245; Manufacturers' Ry. Co. v. United States, 246 U. S. 457, 38 S. Ct. 383, 62 L. Ed. 831; Virginian Ry. Co. v. United States, 272 U. S. 658, 665, 666, 47 S. Ct. 222, 71 L. Ed. 463; Georgia Commission v. United States, 283 U. S. 765, 775, 51 S. Ct. 619, 75 L. Ed. 1397.

Viewed in this light, there is no question, we think, that the order of the Interstate Commerce Commission must stand. It may possibly be that the evidence before, and the subordinate fact findings of, the Commission are insufficient to sustain the ultimate conclusion of discrimination against interstate commerce as a whole. Florida v. United States, 282 U. S. 194, 51 S. Ct. 119, 124, 75 L. Ed. 291. It is true that there are findings here of the loss to interstate carriers if there were to be a continuance of the diversion of traffic from interstate carriers to Ohio intrastate carriers, which diversion had already occurred to a large degree, and findings of the loss of income to interstate carriers if the reductions made in Ohio intrastate rates were also to be reflected in or applied to interstate rates, and this may be enough even under the case just cited. Cf. Railroad Commission of Wisconsin v. Chicago, B. & Q. R. Co., 257 U. S. 563, 42 S. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086; New York v. United States, 257 U. S. 591, 42 S. Ct. 239, 66 L. Ed. 385. It is also true that we have here what we did not have in the Florida Case—substantial evidence to support the charge of unreasonable preference and prejudice as between persons and localities in intrastate commerce on the one hand, and interstate commerce on the other hand— and that this discrimination as between persons and localities is in itself a discrimination against the persons and localities carrying on that commerce; yet, in view of the holding

of the Florida Case, that where the Commission undertakes to sustain an order as to intrastate rates on the ground that they impose an undue burden upon the revenues of the carrier, "it must appear that there are findings, supported by evidence, of the essential facts as to the particular traffic and revenue, and the effect of the intrastate rates, both as existing and as prescribed, upon the income of the carrier, which would justify that conclusion," it is possible that the findings in the present case are not full enough or specific enough.

The Florida Case also seems to imply that the "discrimination against interstate commerce" mentioned in section 13 is to be limited solely to that discrimination which imposes an undue burden upon the revenues of the interstate carrier by requiring intrastate service at less than cost, or at well below the interstate level of compensation. We doubt whether these words should be thus limited in their meaning; and while there may be even greater doubt as to the application of this doctrine, even when so limited, to a case where the loss of revenue is to carriers other than those rendering the intrastate service, on the whole we prefer to place our decision on the single ground of the existence, or nonexistence, under the intrastate rates, of preference and prejudice as between persons and localities.. We do not believe that it is necessary to decide any other question, for the right of the Interstate Commerce Commission to remove such preference and prejudice, if it exists, is no longer open to dispute. Louisiana Public Service Commission v. Texas & N. O. R. Co., 284 U. S. 125, 131, 52 S. Ct. 74, 76 L. Ed. 201; Florida v. United States, supra, 282 U. S. 210, 51 S. Ct. 119, 75 L. Ed. 291.

Nor do we think that it can be disputed, upon the present record, that there is substantial evidence to support the finding of discrimination against persons and localities, if not, in fact, a demonstration of the correctness of that finding. It is urged that the Commission erred in placing the burden of proof upon the plaintiffs to show that the intrastate rates were not unduly preferential to Ohio persons and localities, and unduly prejudicial to persons and localities in other states. We cannot concur. A question of where lies the burden of proof can be of serious moment only when the evidence is in a state of equipoise. Here, with all the evidence before it, the Commission found that the intrastate rates were unduly preferential

of Ohio shippers and localities and unduly prejudicial against interstate localities and shippers in Pennsylvania and West Virginia. There was no question of the burden of proof presented, for, as we have said, this was practically the only conclusion at which the Commission could have arrived.

The Commission also found that the interstate rates from the Pittsburgh, Freeport, Connellsville, and Fairmount districts to destinations in Northeastern Ohio were reasonable. It is contended that the order is void because the Commission did not also examine into and make findings upon all other rates from the Inner and Outer Crescents to Northeastern Ohio. This contention is likewise without merit. It is enough if discrimination in respect of the Pittsburgh, Freeport, Connellsville, and Fairmount districts, and the coal operators of these districts, be found. There was no obligation upon the Commission to find specifically that each individual rate was reasonable, or that rates from all localities into Northeastern Ohio were reasonable. Cf. United States v. State of Louisiana, supra, decided Nov. 6, 1933. If it be contended that any rate from some other locality is unreasonable, and it is desired in good faith to test this question, the one so contending is afforded a remedy by application to the Interstate Commerce Commission.

It is also contended that under evidence introduced or tendered by the plaintiffs, involving a comparison with the rates and operating conditions in the Indiana and Illinois coal mining districts, the Ohio intrastate rates were shown to be maximum reasonable rates, and the Commission was without power to raise such rates above that reasonable maximum. But the Commission had the power to prescribe intrastate rates in place of those found unduly to discriminate against persons and localities, and when it ordered the resumption of the rates in force prior to August 1, 1932, it necessarily placed its stamp of approval upon those rates as, upon the whole, reasonable. State Corporation Commission of Virginia v. Aberdeen & Rockfish R. Co., 136 I. C. C. 173, 180. But apart from this, "proceedings to remove unjust discrimination are aimed directly only at the relation of rates." "If the interstate rates are maintained, the discrimination can be removed only by raising the intrastate rates." American Express Co. v. State of South Dakota ex rel. Caldwell, 244 U. S. 617, 624, 37 S. Ct. 656, 660, 61 L. Ed. 1352. To ask the court to review the decision of the Commission as to whether the disparity should be removed by lowering the interstate rate, or by raising the intrastate rate, or by both, or as to whether, in view of the evidence in regard to the Indiana-Illinois coal rates and operating conditions, the Ohio rates must be regarded as reasonable maximum rates, is asking the court to substitute its judgment for that of the Commission, and to pass upon the soundness of the reasoning of the Commission, the wisdom of its conclusion, and the consistency of the present order with those made in other cases. All of these decisions involve the exercise of powers which, under the authorities already cited, the court does not possess.

Lastly, it is urged, but with less vigor, that the intrastate carriers are justified in lowering intrastate rates for competitive reasons, and that only by the lowering of such rates could the Ohio carrier increase its tonnage, in competition with interstate carriers for this identical type of freight elsewhere produced. Compare Texas & Pac. Ry. Co. v. United States, 289 U. S. 627, 636, 53 S. Ct. 768, 77 L. Ed. 1410. The avoidance of such destructive competition, and the establishment of a general policy regarding the national transportation system as a whole, rather than as a number of separate units, were referred to in the case of United States v. Louisiana, supra, decided November 6, 1933, as among the purposes of Congress in passing the Transportation Act of 1920. This, we think, is as it should be. Very broad powers have been given the Commission, under section 15a of the Interstate Commerce Act, as added by Transportation Act, § 422 (49 USCA § 15a) to fix rates so that the carriers "as a whole" may earn "an aggregate annual net railway operating income equal, as nearly as may be, to a fair return upon the aggregate value of the railway property." It has been said to be impossible "to escape the dovetail relation" between sections 13 (4) and 15a, as added by Transportation Act 1920, §§ 416, 422, 49 USCA §§ 13 (4) and 15a (Railroad Commission of Wisconsin v. Chicago, B. & Q. R. Co., 257 U. S. 563, 586, 42 S. Ct. 232, 237, 66 L. Ed. 371, 22 A. L. R. 1086; Florida v. United States, supra, 282 U. S. at page 211, 51 S. Ct. 119, 75 L. Ed. 291), and we are inclined to the opinion that competition alone is insufficient justification for the disruption of the entire rate structure which has been set up by the Interstate Commerce Commission with all the various elements introduced by the Transportation Act in view. But whether this position be sound or not, we are quite firmly convinced that competition cannot be urged as a justification for

the practice of one of the worst evils which the Interstate Commerce Act and its amendment of 1920, the Transportation Act (41 Stat. 456) were designed to end; the undue preference and prejudice of discrimination.

For the reasons above stated the bills in the present case will be dismissed. An order may first be drawn granting the petitions to intervene upon which the court has not yet acted, and then another order dismissing the bills. Decree may be prepared and filed Saturday, January 13, 1934.

NOTE. The above per curiam opinion was prepared by Judge SMITH HICKENLOOPER a short time prior to his death, pursuant to an arrangement had at a conference of the three-judge court at Cincinnati on December 2, 1933.

Judge HICKENLOOPER'S death ensued, and the opinion was found among his files of the cases involved. It is now published as the opinion of the court, the Honorable ROBERT R. NEVIN and the undersigned having entered our concurrence on a copy thereof, filed in the United States District Court (chambers), Columbus, Ohio.

BENSON W. HOUGH,
United States District Judge,
Southern District of Ohio.