## ILLINOIS COMMERCE COMMISSION ET AL. *v.* THOMSON, TRUSTEE.

No. 178. Argued January 12, 1943.—Decided April 12, 1943.

*Mr. William C. Wines*, Assistant Attorney General of Illinois, with whom *Messrs. George F. Barrett*, Attorney

General, and *Albert E. Hallett,* Assistant Attorney General, were on the brief, for appellants.

*Mr. Nye F. Morehouse,* with whom *Messrs. William T. Faricy* and *P. F. Gault* were on the brief, for appellee.

*Solicitor General Fahy* and *Messrs. Robert L. Stern, Daniel W. Knowlton,* and *J. Stanley Payne* filed a brief on behalf of the Interstate Commerce Commission, as *amicus curiae. Messrs. William C. Chanler* and *Herman Horowitz* also filed a brief on behalf of New York City, as *amicus curiae,* urging reversal.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

This case, which comes here by direct appeal under § 266 of the Judicial Code, 28 U. S. C. § 380, involves the meaning of an order of the Interstate Commerce Commission and its application to the Illinois intrastate commutation passenger fares of the Chicago & North Western Railway. By interlocutory and finally by permanent injunction, the district court below of three judges has enjoined appellants, the Illinois Commerce Commission and named law enforcement officers of the state, from taking any steps to prevent a 10% increase in such fares by appellee, trustee of the Chicago & North Western Railway Company in reorganization under § 77 of the Bankruptcy Act. The 10% increase, if effective, would bring the fares in some instances above the maximum of two cents per mile imposed by state statute. Illinois Revised Statutes, 1941, c. 114, §§ 154–56.

The bill of complaint alleges, and the district court found, substantially as follows: Until March 7, 1942, appellee and his predecessor in interest, the Chicago & North Western Railway Company, had collected commutation fares for the intrastate transportation of passengers in Illinois, as required by a report and order of the Interstate Commerce Commission entered October 6, 1925, in a pro-

ceeding under § 13 of the Interstate Commerce Act (now 49 U. S. C. § 13). The purpose and effect of that order was to require the Chicago & North Western to increase its intrastate commutation fares to substantially the same level as the fares then in force for interstate passenger traffic, which had previously been increased by order of the Commission, and thus to remove undue preference and prejudice and unjust discrimination against interstate commerce, as well as undue preference and advantage to persons traveling in intrastate commerce on the Illinois lines of the Chicago & North Western. The order was entered upon appropriate findings. Intrastate Rates Within Illinois, Docket No. 11703, 102 I. C. C. 479. It directed an increase of 20% over the then prevailing rates for the intrastate commutation fares involved in this case, but provided that this increase should be "subject to a maximum of 2 cents per mile," the Commission's opinion stating that this was "in deference to the state statute." (102 I. C. C. at 485.)

On February 28, 1936, the Interstate Commerce Commission, after a general and nationwide investigation of railroad passenger fares, entered an order by which it retained its continuing jurisdiction over the Illinois intrastate commutation passenger fares here in question, by specific reference to its previous order in Docket No. 11703, although the order. did not require any modification of those fares. Passenger Fares and Surcharges, Docket No. 26550, 214 I. C. C. 174.

In December 1941, the Commission undertook a further nationwide investigation of both freight rates and passenger fares, to determine whether increases of 10%, as asked by the railroads, should be authorized in view of increased operating expenses and costs of materials and supplies. By order of January 21, 1942, in that proceeding, known as Ex parte No. 148, the Commission—upon findings that the increase was necessary for adequate and

efficient service during the war emergency—authorized the railroads, including the Chicago & North Western, to increase passenger fares by 10%. The order further directed that "all outstanding orders, as amended, of the Commission, authorizing or prescribing interstate and intrastate fares, or bases of fares be, and they are hereby, modified, effective concurrently with the establishment of the increased fares" approved by the order, but only to the extent necessary to permit the authorized increase to be added to "the interstate and intrastate fares approved or prescribed in, or maintained or held by virtue of, said outstanding orders"; that a copy of the order be filed "in the docket of each such proceeding, including those proceedings under § 13 of the Interstate Commerce Act enumerated in the order of February 28, 1936, in Docket No. 26550"; and "that all tariffs or supplements changing fares by authority of this order, which are maintained or held by authority of outstanding orders of the Commission, shall bear on their title pages specific reference to this order." In a report and order of March 2, 1942, in Ex parte No. 148, the Commission reaffirmed these findings, authorized certain increases in freight rates, and made further findings of fact in support of the increases. Increased Railway Rates, Fares, and Charges, 1942, 248 I. C. C. 545.

The district court held that the Commission's order of January 21, 1942, by its specific references to all outstanding orders previously issued in § 13 proceedings, which would include that of 1925 in Docket No. 11703, had been made applicable to the Illinois commutation passenger fares here in question.

Acting under the purported authority of these orders, appellee, about February 6, 1942, filed with the Illinois Commerce Commission, and with the Interstate Commerce Commission, tariff schedules referring to the latter's order of January 21, 1942, and increasing by 10%, effective

March 8, 1942, its previously existing Illinois intrastate passenger commutation fares. The fares proposed by these tariffs in some instances exceed the limit imposed by the Illinois two cent fare law. On February 18th the Illinois commission issued an order purporting to suspend these tariffs and the increased fares named in them until July 6, 1942, and ordered appellee not to file any new tariff or otherwise to change the previously existing fares during the period of suspension or any extension of it without the permission of the state commission. The order directed that a hearing be held by the state commission on the propriety of the proposed changes.

The district court held that the effect of the state commission's order was to prescribe for appellee the continuation of the intrastate passenger fares in force immediately before February 18, 1942, and to prohibit appellee from increasing or modifying those fares save as permitted by the state commission; that appellants have threatened and continue to threaten appellee with the prosecution of numerous proceedings in the state courts to impose upon appellee and his agents fines and penalties for failure to comply with the state commission's order; that unless appellants are enjoined from such threatened prosecutions and cumulative penalties, appellee will suffer irreparable injury.

From all this the district court concluded, as matters of law, that the Interstate Commerce Commission's order of January 21, 1942, is a valid order which modified the 1925 and 1936 orders taking jurisdiction over the intrastate commutation fares in question, and that the 1942 order, without more, authorized the increased fares prescribed in the tariffs filed by appellee. The court held that the Illinois commission's order of February 18, 1942, was invalid and without force with respect to these commutation fares because in conflict with the 1942 order of the Interstate Commerce Commission, and for the additional

reason that the old fares continued in effect by the state commission are confiscatory and in violation of the Due Process Clause of the Fourteenth Amendment. The court accordingly restrained appellants from enforcing the state commission's order, and from interfering with the collection of the commutation fares prescribed by appellee's proposed tariffs.

Appellants assail the judgment of the district court on the grounds that the purport and true meaning of the Interstate Commerce Commission's 1942 order was not to order into effect Illinois intrastate fares superseding those previously in force, but only to assent to increased rates when and if permitted by the state commission, which it has not done; that the Interstate Commerce Commission's order, if intended to compel increases in intrastate rates, is not supported by adequate findings (cf. *Florida* v. *United States,* 282 U. S. 194); and that, so far as the judgment below rests on the alleged confiscatory character of the preëxisting rates, the finding of confiscation is not supported by the record, and appellee has not pursued the administrative remedy available before the state commission, as is prerequisite to equitable relief.

The meaning and appropriate application of the Interstate Commerce Commission's order are undoubtedly obscure. We have heard exhaustive argument and examined elaborate briefs by the parties to this litigation and by the City of New York as amicus curiae, endeavoring to throw light on its true meaning. Like arguments have been made, in a cause pending in the New York state courts,[1] to determine the application of this order to intra-

---

[1] The Supreme Court of New York concluded that the Commission's order was not intended to direct a 10% increase in those intrastate rates. *Matter of Transit Commission* v. *Long Island R. Co.,* 178 Misc. 290, 33 N. Y. S. 2d 993. The Court, however, suggested that an application might be made to the Interstate Commerce Commission for a clarification of its order to remove any doubt. On such

state standard passenger fares of the Long Island Railroad.

As we were in doubt as to the intended scope of the Commission's order, and the Commission had not filed a brief or otherwise intervened in this litigation, we requested a brief on its behalf discussing the meaning and application of its order. In compliance with our request it has filed a brief, in which it takes the position that the 1942 order was not intended, and should not be construed, to direct a 10% increase in the Illinois intrastate commutation fares established in 1925. Although the brief is not wholly free from the obscurity surrounding the order itself, the Commission's ultimate position that the order is inapplicable to these particular commutation fares is one which, under all the circumstances of the case, we accept.

The doubt concerning the application of the 1942 order arises from uncertainty as to the extent to which its broad language is to be deemed restricted when read with the earlier orders of the Commission relating to intrastate rates, and in the light of the nature of the functions which the Commission is called on to perform in prescribing such rates. On its face, the order provides broadly that: "all outstanding orders, as amended, of the Commission, authorizing or prescribing interstate and intrastate fares . . . are hereby, modified, effective concurrently with the establishment of the increased fares herein approved, only to the extent necessary to permit the increase herein authorized to be added to the interstate and intrastate fares approved or prescribed in . . . said outstanding

application the Commission refused to clarify the order, and on rehearing the court adhered to its original decision. I. C. C. Order, entered in Ex parte 148, April 6, 1942; 107 N. Y. L. Journal, p. 1958, May 8, 1942. The decision was affirmed by the Appellate Division, 265 App. Div. 847, 38 N. Y. S. 2d 361, and the case is now pending in the New York Court of Appeals.

orders." Whether this, without more, was intended or operates to direct a 10% increase of appellee's intrastate commutation fares in Illinois, so as to preserve the established relationship between them and interstate fares, rather than intended to permit appellee to obtain the 10% increase only with the assent of the state commission, is the question.

The position of the Interstate Commerce Commission is, in substance, that the order is not to be construed as prescribing Illinois intrastate commutation fares for the Chicago & North Western, because the order was unattended by the procedure which the Commission regards as the appropriate basis for such an order, and consequently that the Commission did not have in mind or intend that the order should have that effect.

It has long been established that the Interstate Commerce Commission, under § 13 (4) of the Act, has power to supersede an intrastate rate by prescribing in its stead a new rate which the Commission finds necessary to remove undue or unreasonable prejudice to interstate commerce resulting from the maintenance of the intrastate rate. It may rightly establish such a modification of the intrastate rate only upon notice to the intrastate carriers concerned, and hearings, followed by findings showing prejudice to interstate commerce. Upon such findings the statute makes it the duty of the Commission to prescribe the just and reasonable intrastate rate found necessary to remove the prejudice. *Wisconsin Railroad Comm'n* v. *C., B. & Q. R. Co.*, 257 U. S. 563; *Louisiana Public Service Comm'n* v. *Texas & New Orleans R. Co.*, 284 U. S. 125; *United States* v. *Louisiana*, 290 U. S. 70. And for purposes of this case we may assume, without deciding, that intrastate rates which have once been prescribed by § 13 orders may be modified by a blanket order raising or lowering the level of intrastate and interstate rates, even though the Commission makes no new findings

of discrimination but leaves that question subject to later inquiry upon applications filed in particular cases. Cf. *United States* v. *Louisiana, supra,* 73–79; *New England Divisions Case,* 261 U. S. 184, 196–201.

In 1920 the Interstate Commerce Commission authorized a general increase of 20% in interstate passenger fares, establishing a countrywide standard passenger fare of 3.6 cents a mile. Increased Rates, 1920, 58 I. C. C. 220 and 302. The Commission later instituted the § 13 proceeding which resulted in its 1925 order increasing by 20%, subject to a 2 cent per mile maximum, the Illinois intrastate commutation fares of the Chicago & North Western, in order to remove the prejudice of such fares to interstate commerce. Intrastate Rates Within Illinois, 102 I. C. C. 479. This was followed by the 1936 order directing a general reduction of interstate passenger fares. By this order the Commission, as a means of increasing passenger traffic, reduced maximum standard Pullman fares to three cents and coach fares to two cents a mile. And to prevent intrastate fares subject to the earlier § 13 orders from being higher than the new interstate maximum fares, the Commission ordered all outstanding § 13 orders to be modified to the extent necessary to permit the new fares to become effective. Passenger Fares and Surcharges, 214 I. C. C. 174. While this order affected many intrastate fares which had previously been subject to § 13 orders, it was without effect on Illinois commutation fares on the Chicago & North Western, which had been no greater than the maximum of two cents a mile. Thus the Illinois commutation fares involved in the present case, established in 1925, were not reduced between 1925 and 1942.

It is the position of the Commission that, since the 10% increase of 1942 if mandatory would raise these Illinois intrastate commutation fares (unlike the standard fares) above the level set by the § 13 order of 1925, and

as the Commission made no special findings justifying such an increase of the level of intrastate fares, the 1942 order is not to be understood to have the effect ascribed to it by the district court. The Commission points out that even if the need of equivalence of intrastate and interstate fares has not changed since 1925, the Commission is concerned not only with the necessity for maintaining the equivalence, but also with the particular point at which the fares should be brought together. The Commission intimates that its findings establishing the 1925 maximum level of intrastate fares would not be regarded by it as sufficient support for a still higher level in 1942. It urges that the absence of findings supporting a higher level therefore indicates that its 1942 order was not intended, without more, to increase by 10% the Illinois intrastate commutation fares.[2]

The Interstate Commerce Commission is without jurisdiction over intrastate rates except to protect and make effective some regulation of interstate commerce. In view of the Commission's construction of its order, and the grounds upon which it rests, we can only conclude that there is at least serious doubt whether the 1942 proceeding and the order which resulted from it were ever intended by the Commission to increase the intrastate rates in question. Since the Commission alone is authorized to wield the constitutional power to set aside state-established intrastate rates by prescribing intrastate rates itself, state power cannot rightly be deemed to be sup-

---

[2] The brief filed by the Commission in this Court to assist in discovering the intended meaning of the order in Ex parte No. 148, states that "the 1942 increase may well be mandatory" as to standard intrastate passenger fares covered by prior outstanding § 13 orders, as in the New York case discussed in note 1, *supra*. This is said to be because, in the 1936 proceeding, such fares were reduced, and because the 10% increase of 1942 would only raise them to a level well within the maximum prescribed for such fares in § 13 proceedings in 1920.

planted so long as the Commission's exercise of its authority is left in serious doubt. *Arkansas Railroad Comm'n* v. *Chicago, R. I. & P. R. Co.,* 274 U. S. 597, 603. And where the applicability of the order is as doubtful as it is in this case, we should not feel justified in disregarding the Commission's disclaimer in this Court of all intention to override Illinois state law by its 1942 order—especially in view of the fact that in the § 13 proceeding in 1925 the Commission had framed its order in deference to the two-cent fare law prevailing in Illinois.

It is regrettable that prolonged litigations should have resulted because of the absence from the Commission's order of a sentence more precisely defining its scope, or of a clarifying order which could have been entered at any stage of the pending litigations.

Since we accept the Commission's conclusion that the 1942 order is inapplicable, it is unnecessary for us to consider whether, as appellants contend, the order if applicable would be open to collateral attack in this proceeding for the insufficiency of the Commission's findings to support it, or whether that issue may be litigated only in a suit to set aside the order brought against the United States as prescribed by the Urgent Deficiencies Act. 38 Stat. 219, 28 U. S. C. § 46.

Only a word need be said of the district court's finding of confiscation. Appellants filed no answer to the bill of complaint and no evidence was taken in the cause. Judgment in favor of appellee was entered upon appellants' motion to strike the complaint and dismiss the cause, and upon the prayer of the bill for a permanent injunction. The only support for the finding of confiscation is in the general allegations of the complaint that the existing intrastate commutation fares complained of are confiscatory, and more particularly that these fares are not adequate to compensate for the cost of the particular service.

Apart from the insufficiency of such allegations, when not buttressed by convincing proof, to sustain an injunction setting aside rates as confiscatory, see *California Railroad Comm'n* v. *Pacific Gas Co.*, 302 U. S. 388, 401, it appears that when the present suit was brought the state commission had ordered a hearing before it concerning the propriety of appellee's proposed increase of the existing, allegedly confiscatory, fares. There is no contention and no finding that appellee's attack on the existing fares as confiscatory was not open for consideration before the commission. The equitable remedy sought by appellee in court should have been denied because of his failure first to pursue the administrative remedy thus afforded. *Gilchrist* v. *Interborough Co.*, 279 U. S. 159, 208–09; *Natural Gas Co.* v. *Slattery*, 302 U. S. 300, 310–11. There are no circumstances of peculiar urgency alleged, and no other ground is disclosed by the record which would warrant a federal equity court in dispensing with this salutary requirement.

Upon this record the district court should have declined to pass on the merits of the confiscation issue.

*Reversed.*

MR. JUSTICE RUTLEDGE took no part in the consideration or decision of this case.

MR. JUSTICE ROBERTS:

I am of opinion that the judgment should be affirmed.

This case is important not so much because of the relative rights of the parties as of the principles announced by the court, which I think are likely to produce unfortunate results in later cases.

*First.* The meaning and scope of the Interstate Commerce Commission's order is, in my view, clear. It expressly included the earlier § 13 order affecting the intrastate rates of the Chicago and North Western which are

in question. I could understand the assertion that the order is obscure if its purported application were to intrastate rates not specifically mentioned in the order itself. But here the Commission seems *ex industria* to have referred to an earlier § 13 order so as to leave no doubt of its purpose.

*Second.* Even if the order were obscure, any party in interest could have obtained a clarification by application to the Commission. It is somewhat difficult to understand why the Commission, in response to an informal application, refused to vouchsafe any clarification of the order in the case of New York intrastate rates.

*Third.* It seems to me inadmissible to permit the Commission, in a litigation such as the present, to suggest that its order was not intended to cover the intrastate rates in question because, forsooth, the order is not supported by requisite findings. I fail to see the fairness or equity of permitting parties to struggle for months or years over the meaning or scope of an order which happens to be involved in a collateral proceeding and then permit the Commission to appear in the litigation and attempt to explain why its order does or does not cover the situation disclosed.

*Fourth.* I also think it inadmissible to litigate, in a collateral proceeding such as this, the question of the adequacy of the support of the Commission's order in the record made before the Commission. Congress has provided a method whereby orders not entered in accordance with the provisions of the Interstate Commerce Act may be set aside or enjoined by a petition to a District Court of the United States. This method of attack is available to any party in interest or any intervenor before the Commission. It is wrong, in my judgment, to permit a state commission, or any other party, to forego the method prescribed by the Urgent Deficiencies Act for enjoining or setting aside a Commission order on such ground as

is here asserted, and to act in the teeth of the order, reserving an attack on the findings, or lack of findings, to support the order until its regulations are challenged in an independent proceeding. In such a proceeding as this, I think the order should be treated as binding until modified or set aside in the manner provided by federal law.